The BOROUGH OF DOYLESTOWN

v.

The DOYLESTOWN BOROUGH
POLICE ASSOCIATION,
Appellant.

Commonwealth Court of Pennsylvania.

Argued May 18, 1999.
Decided June 22, 1999.

Gary M. Lightman, Harrisburg, for appellant.

Joseph C. Rudolf, Philadelphia, for appellee.

Before SMITH, J., PELLEGRINI, J., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

The Doylestown Borough Police Association (Police Association) appeals from an order of the Court of Common Pleas of Bucks County (trial court) vacating an arbitration award that reduced the percentage of member contributions to the Police Pension Plan (Plan) to 2.5% from 5% as illegal.

The Police Association and the Borough of Doylestown (Borough) entered into a Collective Bargaining Agreement (Agreement) covering the years from 1995 to 1998 that set forth, *inter alia*, under which circumstances and in what amounts police officers would have to contribute as members of the Plan. Specifically, Article XVII(D) of the Agreement provides, in pertinent part:

> All members shall contribute to the Police Pension Plan up to the maximum amount permitted by Act 600,[1] 53 P.S. § 767 et seq. However, if the **Plan Actuary, on a yearly basis,** determines

---

1.  Act of May 29, 1956, P.L. (1955) 1804, *as*     *amended,* 53 P.S. § 772.

that some lesser amount is sufficient to maintain the actuarial soundness of the Plan, then the lesser amount of police contributions, reduced up to zero, shall be directed by the Borough Council at its last regularly scheduled meeting in December of the preceding year. (Emphasis added).

Act 600[2] provided under which circumstances and in what amounts police officers had to make pension contributions and allowed the cessation of contributions in any year in which an actuary found a plan to be financially sound.

In 1996, the Plan Actuary determined that based on the most recent actuarial valuation report prepared in accordance with the Municipal Plan Funding Standard and Recovery Act, commonly known as Act 205,[3] which, for the 1997 actuarial year, would be the 1995 report,[4] (Act 205 report) that members would be required to contribute 5% of their salaries to the fund

beginning on January 1, 1997.[5] When the Borough notified the Police Association of its intention to require police officers to contribute 5% of their salaries to the Plan, the Police Association filed a grievance pursuant to Article XVI of the Agreement contending that the Plan was presently actuarially sound and that there was no need for member contributions. Unable to resolve the grievance, it proceeded to arbitration as provided for in the Agreement.

Before the arbitrator, the Police Association introduced evidence that the Plan was, in fact, actuarially sound, such that member contributions were not needed to support the Plan. The Police Association contended that the Borough should be required to allocate the amount of state aid received in such a way that would eliminate member contributions. Not disagreeing with the Police Association that the Plan was, at present, actuarially sound,[6]

2.  Specifically, Section 6 of Act 600 provides, in pertinent part:

    (a) Members **shall** pay into the fund, monthly, an amount equal to **not less than five per centum** nor more than eight per centum of monthly compensation.

    * * *

    (c) If **an actuarial study** shows that the condition of the police pension fund of any borough, town, or township or regional police department is such that the payments into the fund by members may be reduced below the minimum percentages hereinbefore prescribed, or eliminated, and that if such payments are reduced or eliminated contributions by the borough, town, township or regional police department will not be required to keep the fund actuarially sound the governing body of the **borough,** town, township or regional police department **may, on an annual basis, by ordinance or resolution reduce or eliminate payments into the fund by its members.** 53 P.S. § 772 (emphasis added).

3.  Act of December 18, 1984, P.L. 1005, *as amended,* 53 P.S. § 895.101–895.802.

4.  Section 201 requires municipalities that maintain a pension plan to create and file an actuarial valuation report and provides:

    (a) Each municipality which has established or maintains a pension plan for its employees, including any municipality which participates in the Pennsylvania Mu-

nicipal Retirement System, shall cause to be made actuarial valuation reports. Actuarial valuation reports shall be made biennially, unless the applicable municipality is applying or has previously applied for supplemental state assistance . . .

    (b) The biennial actuarial valuation report required pursuant to subsection (a) shall be made as of the beginning of each plan year occurring in an odd-numbered calendar year and shall be filed with the executive direction of the commission no later than the last business day of March occurring in the following calendar year.

5.  Section 302 of Act 205 provides, in pertinent part:

    The financial requirements of the pension plan for the following plan year shall be based on the most recent actuarial valuation report of the pension plan prepared pursuant to Chapter 2. 53 P.S. § 895.302.

6.  The Act 205 report for 1995 showed a Plan shortfall because 1994 was, in part, a poor investment year. Because of the appointment of new investment advisors, however, and better market conditions in the beginning of 1995, the unfunded liability had disappeared such that the tentative 1997 Plan showed that the Plan would be actuarially sound. Nevertheless, the Plan Actuary testified that because he was required by Act 205 to use the most

the Borough contended that Act 205 required that the financial soundness of the Plan was not to be determined on a year-to-year basis as provided for in Act 600 and the Agreement, but based on the most recent biannual Act 205 report. Because the most recent Act 205 report found that the Plan was unsound, it contended that it could not legally reduce the amount of pension contributions for the 1997 Plan year.

Agreeing with the Police Association, the arbitrator issued an award reducing the amount of police contributions to the Plan to 2.5%, reasoning that 5% contributions would have the effect of depositing monies into the Plan that were not needed. Answering the Borough's argument that the Act 205 report had to be used, the arbitrator stated, "I am also persuaded that blind adherence to the 'language' of Act 205 cannot be used to justify contravening the spirit of the law in a situation such as this one.... I am persuaded that there is nothing in Act 205 which compels the assessment of contributions when those contributions are not necessary from either the police officers or the Borough."

Arbitration Award, December 30, 1997, p. 7.

■ The Borough then appealed to the trial court to vacate the arbitration award because the arbitrator's award required it to perform an illegal act, i.e., reduce the minimum amount of police contributions below 5% required by Act 600 that bases the amount of the contribution on the most recent Act 205 report. Agreeing with the Borough, the trial court vacated the award and found that the Plan's actuary finding that the Act 205 report had to be used to determine the actuarial soundness of the Plan. Because the most recent Act 205 report found that the plan was unsound, it held that the arbitrator exceeded his powers by reducing contributions when, for purposes of Act 600, the Plan was financially unsound. The Police Association then took this appeal.[7]

■ The Police Association contends that the trial court erred in finding that the arbitrator exceeded his authority because Act 600 authorizes that the Borough *may* reduce or eliminate member contributions in each year that an actuarial study finds that the Plan is financially sound.[8] Because the Borough agreed through col-

---

recent actuarial valuation report in determining the soundness of the Plan, which, in this case, was the 1995 report, and that report showed a deficit in the Plan, he was required to impose the statutory minimum of 5% member contributions beginning January 1, 1997.

**7.** Our scope of review when reviewing an Act 111 arbitration award is narrow certiorari and is limited to questions pertaining to (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995). An arbitrator exceeds his powers when his award requires a municipality to take an action that is prohibited by statutory law. *See Swatara Township v. Swatara Township Police Department*, 164 Pa.Cmwlth. 378, 642 A.2d 660 (1994), *petition for allowance of appeal denied*, 540 Pa. 589, 655 A.2d 519 (1995) (arbitrator exceeded his authority by requiring township to offset member contributions to pension fund by means of a supple-

mental salary increase which would violate Act 600).

**8.** The Police Association also contends here that the portion of the award directing the Borough to allocate state aid in a non-discriminatory manner is valid. Although the arbitrator discussed the allocation of state aid among the various pension plans administered by the Borough, he did not direct the Borough to allocate that aid in any specific way. The arbitrator merely concluded that in his opinion, it was the Borough's inequitable allocation of state aid that was a factor leading the Borough to impose a 5% contribution requirement. The arbitrator then issued an award reducing the amount of contributions to 2.5% to rectify that inequity. In any event, a municipality receiving general municipal pension system state aid under Act 205 is given absolute discretion to determine annually how aid is to be distributed to its various pension plans. *See Pennsylvania State Lodge of the Fraternal Order of Police by Bascelli v. Hafer*, 525 Pa. 265, 579 A.2d 1295 (1990).

lective bargaining that it would be required to do so when the Plan Actuary made the determination,[9] it argues that once the Plan Actuary agreed that for 1997 the Plan was sound, the Borough was required to reduce member contributions below the statutory minimum of 5%, notwithstanding the most recent Act 205 report. Since the Police Association is correct that both the Agreement and Act 600 allow for the reduction of pension contributions on an annual basis, the issue then becomes whether that provision is vitiated, and that provision in Act 600 that allows a reduction in contributions based on an "actuarial study" is amended by Act 205 to make the only actuarial study to determine whether a plan is financially sound is the one required under its provisions.

■ Act 205, passed in 1984, provides the method a municipality is required to use in determining whether a pension plan administered by a municipality is actuarially sound. Section 301(a) of Act 205 provides:

> (a) Application.—Notwithstanding any provision of law, municipal ordinance, municipal resolution, municipal charter, pension plan agreement or pension plan contract to the contrary, the applicable provisions of this chapter **shall** apply to any municipality which has established and maintains, directly or indirectly, a pension plan for the benefit of its employees, irrespective of the manner in which the pension plan is administered and to the respective pension plan.

53 P.S. § 895.301(a) (emphasis added). As can be seen, this provision of Act 205 specifically provides that its provision applies notwithstanding any inconsistent provision of law or pension agreement.

Regarding which actuarial studies are to be used in determining the soundness of the Plan, Section 302 of Act 205, 53 P.S.

§ 895.302, provides "the financial requirements of the pension plan for the following year **shall** be based on the most recent actuarial valuation report of the pension plan prepared pursuant to [Sections 201–208, 53 P.S. § 895.201–895.208]." By mandating that only Act 205 reports are to be used to determine a Plan's financial soundness and its financial requirements, this provision required that the "actuarial study" used in Act 600 be used to determine if member contributions could be reduced or eliminated. By providing that actuarial valuation "shall be made as of the beginning of each plan year occurring in an **odd-numbered calendar year**," i.e., biannually, it effectively amended those provisions of Act 600 that allowed the changes to be made on a yearly basis because the actuarial report would be the same in the year that an Act 205 report was not filed. As a result of Act 205 then, member contributions are set every two years based on the Act 205 report no matter whether the Plan becomes financially sound or unsound during the intervening year.

In the present case, for the fund year beginning January 1, 1997, the Plan Actuary was required to use the most recent actuarial valuation report, which was the 1995 report, to determine the financial requirements of the Plan. Because the 1995 report found that the Plan was underfunded, the Borough could not voluntarily reduce the amount of member contributions below the 5% required by Act 600 because the most recent Act 205 report indicated a deficit in the Plan. As such, the arbitrator's award is illegal under Act 600 because it orders the Borough to reduce the amount of member contributions to the Plan when the Plan was found to be underfunded in the most recent Act 205 report.[10] Moreover, the award would require the Borough to use a method, other than the

9. The Police Association does not claim that the Borough was precluded from asserting that the award was illegal because it voluntarily agreed during the collective bargaining process to an illegal method of setting contributions. *See Upper Chichester Twp. v. Pennsylvania Labor Relations Bd.,* 153 Pa.Cmwlth. 446, 621 A.2d 1134 (1993).

10. The collective bargaining agreement provides that members **shall** pay into the Plan as required by Act 600 unless the **Plan Actuary**

one statutorily mandated by Act 205, to determine the minimum funding requirements of the Plan.

Accordingly, the order of the trial court is affirmed.

Judge SMITH dissents.

## ORDER

AND NOW, this 22nd day of June, 1999, the order of the Court of Common Pleas of Bucks County at No. 98–0074909–6, dated December 22, 1998, is affirmed.

determines that some lesser amount will keep the Plan financially sound. (*See* Collective Bargaining Agreement, Article XVII(D), *supra*.) Ignoring the effect of the Plan Actuary's testimony that the Plan was sound for year 1997 and the issue of legality, if the Plan Actuary had determined that the Plan was unsound as required under the Agreement, yet if the arbitrator had ignored that requirement in the Agreement and went on to reduced or eliminated member contributions, under the narrow certiorari standard, any challenge that the Plan Actuary did not make the finding that it was sound would be outside our scope of review.