**CITY OF BUTLER, Appellant,**

v.

**CITY OF BUTLER POLICE DEPART-MENT, FRATERNAL ORDER OF POLICE, LODGE # 32.**

Commonwealth Court of Pennsylvania.

Argued May 7, 2001.

Decided July 18, 2001.

Michael D. Hnath, Butler, for appellant.

Eric C. Stoltenberg, Harrisburg, for appellee.

BEFORE: DOYLE, President Judge, KELLEY, J., and FLAHERTY, Senior Judge.

DOYLE, President Judge.

The City of Butler (City) appeals from the order of the Court of Common Pleas of Butler County, which denied a petition to vacate specific sections of an Act 111 [1] interest arbitration award that eliminated contributions by the City of Butler police officers to the City's police pension fund. The sole issue on appeal is whether an Act 111 arbitration panel may eliminate the obligation of police officers to contribute to their pension plan if that plan has a substantial unfunded actuarial liability.[2]

---

1. Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1–217.10, known as Act 111.

2. The Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, 53 P.S. §§ 895.101–895.803, commonly called Act 205, defines actuarial accrued liability as, "[t]hat portion of the actuarial present value of the pension plans [sic] benefits and expenses which is allocated to the period ending at the beginning day of the

■ The relevant facts are not at issue. The police officers and the City were parties to a collective bargaining agreement (CBA) that expired on December 31, 1999. Throughout 1999, the City and the Fraternal Order of Police, Lodge # 32 (FOP), the exclusive collective bargaining unit for the police officers, bargained for a new CBA. The parties reached an impasse and an Act 111 interest arbitration ensued.[3]

Earlier, in April of 1999, the City obtained its most recent Actuarial Valuation Report for its police pension fund, prepared in conformance with the requirements of Act 205.[4] The report indicated that, as of January 1, 1999, there was an unfunded actuarial accrued liability of over $500,000.[5]

A three-year arbitration award, adopted by a majority of the panel members,[6] was issued on July 19, 2000, establishing new provisions governing certain wages, hours, pensions and other terms and conditions of employment. The City has appealed only the provision relating to pensions, which states:

7. *Pension.* Based on the actuarial information presented during the course of the arbitration, it appears that pension contributions by police officers may be reduced. Therefore,

current plan year by the actuarial cost method." 53 P.S. § 895.102. Act 205 defines actuarial cost method as, "[t]he procedure for determining the actuarial present value of the benefits and expenses of the pension plan ... usually in the form of a normal cost and an actuarial accrued liability." *Id.* The actuarial determination is contained in an actuarial valuation report, which is defined as "[a] report which summarizes the calculations used to determine the normal cost and actuarial accrued liabilities of a benefit plan ... the payment necessary to amortize over a state period any unfunded actuarial accrued liability disclosed, the payment necessary to prevent any increase in any disclosed unfunded actuarial accrued liability, the actuarial balance sheet of the pension plan and any other relevant financial or demographic data." *Id.* Under this section, a defined contribution pension plan is defined as, "[a] type of pension benefit plan which provides for a fixed contribution rate or amount and which provides for periodic benefit payments calculable at retirement dependent on the accumulated contributions, investment income, experience gains and losses credited to the member and the expected mortality of the member." *Id.*

In more simplistic terms, actuarial accrued liability is a forecast of the assets needed to pay benefits for current employees upon their retirement, those who have already retired, those employees who are disabled, and those who are survivors of employees, minus the current assets of the fund, with appropriate entries for expenses and interest. If there are sufficient assets in the plan, there is no unfunded actuarial accrued liability. If there is a shortfall, as in the instant matter, an unfunded actuarial accrued liability exists, and the actuarial valuation report will identify its amount and the payments required, **in addition to normal costs, expenses, interest and employee contributions,** to overcome the unfunded actuarial accrued liability and produce a pension fund that is actuarially sound.

3. Interest arbitration is an extension of the collective bargaining process, which involves arbitration under Section 4 of Act 111, 43 P.S. § 217.4. The resulting arbitration award is, in effect, the new contract which replaces the former collective bargaining agreement. *Upper Gwynedd Township v. Upper Gwynedd Township Police Ass'n*, 777 A.2d 1187 (Pa. Cmwlth.2001).

4. See footnote 2, *supra.*

5. The exact amount is stated to be $555,881 on page 4 of Appellant's brief, $536,881 on page 6 of the brief, and $556,881 on pages 7 and 11 of the brief. Appellee uses $556,881 and Common Pleas never addressed it.

6. One panel member objected to the pension provision here appealed because the pension plan was underfunded at the time of the award. He assented to the award only with the understanding that the pension provision would be effective only when the pension plan would be fully funded.

effective July 1, 2000, contributions by police officers shall be eliminated.

(Reproduced Record (R.R.), page 10a.)

▪ The City appealed to the Court of Common Pleas of Butler County, which denied the appeal and affirmed the award. Common Pleas determined that, because the City could voluntarily eliminate member contributions under the Third Class City Code,[7] it was within the province of the arbitrators also to determine that those contributions could be eliminated. The appeal by the City to this Court ensued,[8] and the City requests that we set aside paragraph 7 of the award and order the Butler police officers to resume their contributions to the pension fund.

▪ Under our limited review of an Act 111 interest arbitration award, for this Court to set aside a provision of an award, the arbitration panel must have either mandated an illegal act or granted an award which addresses issues outside of and beyond the terms and conditions of employment. *Town of McCandless v. McCandless Police Officers Association*, 677 A.2d 879 (Pa.Cmwlth.1996), *petition for allowance of appeal denied*, 547 Pa. 760, 692 A.2d 568 (1997). Because Section 1 of Act 111 specifically includes the subject of "pensions" as a bargainable issue, 43 P.S. § 217.1, the City's challenge to paragraph 7 of the award is grounded on the premise that eliminating contributions by police officers is an illegal act because it conflicts with the provisions of the Third Class City Code, Section 6 of the Police Pension Fund Act (commonly known as Act 600)[9] by analogy, and Act 205 (the Municipal Pension Plan Funding Standards and Recovery Act).[10]

▪ We observe that, once the subject matter of a term of employment is included in a collective bargaining agreement, it becomes, like any other contractual provision, binding on the parties to the agreement unless set aside by the courts.

▪ Because cities are created by the Commonwealth, a city, as a non-sovereign, has only those powers authorized by the Legislature. *Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969), *superceded by statute on other grounds; Local 1400, Chester City Fire Fighters Ass'n v. Nacrelli*, 30 Pa.Cmwlth. 242, 373 A.2d 472 (1977). Thus, our analysis must focus on whether the City is authorized to take the action mandated by the arbitration panel in order to determine whether the award exceeds the authority of the arbitrators.

## I. Third Class City Code

▪ The City argues that Section 4301 of the Third Class City Code, provides that there must be a pension fund and clearly provides that the members are required to make contributions to that fund:

---

7. Act of June 3, 1931, P.L. 932, *as amended*, 53 P.S. §§ 35101–39701.

8. When reviewing an arbitration award issued under the authority of Act 111, our standard of review is limited certiorari, which permits an appellate court to consider questions concerning: (1) the arbitrator's jurisdiction; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) the deprivation of constitutional rights. *Upper Gwynedd.* In addition, an arbitrator: (1) may not order the employer to perform an illegal act; (2) is limited to requiring that a public employer do that which it could do voluntarily; and (3) must craft an award that only encompasses the terms and conditions of employment. *Id.* An error of law alone is not sufficient to reverse an award under this narrow scope of review. *Id.*

9. Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. § 761–778.

10. See footnote 2, *supra.*

Cities shall establish, by ordinance, a police pension fund, **to be maintained by an equal and proportionate monthly charge against each member of the police force,** which shall not exceed annually four per centum of the pay of such member and an additional amount not to exceed one per centum of the pay of such member to be paid by such member or the municipal corporation to provide sufficient funds for payments required by subsection (d) of section 4303 to surviving spouses ... which fund shall at all times be under the direction and control of council....

53 P.S. § 39301. Additional monies in the form of contributions are required under Section 4303(b), which states in pertinent part:

(b) In addition to the retirement allowance which is authorized to be paid from the police pension fund by this act, and notwithstanding the limitations therein placed upon such retirement allowances and upon contributions, every contributor who shall become entitled to the retirement allowance shall also be entitled to the payment of a "service increment" in accordance with and subject to the conditions hereinafter set forth.

\* \* \* \*

(2) Each contributor ... shall pay into the retirement fund a monthly sum in addition to his or her retirement contribution, which shall be equal to one-half of one per centum of his or her salary: Provided, That such payment shall not exceed the sum of one

dollar ($1.00) per month: And provided, That such service increment contribution shall not be paid after a contributor has reached the age of sixty-five years.

\* \* \* \*

(5) All members of the police force who are not contributors to the retirement fund and all those employed by the city after the effective date of this amendment, if required to become contributors to the retirement fund, shall be subject to the provisions of this act.

53 P.S. §§ 39303(b)(2) and (b)(5). Based on these statutory provisions, the City contends that there is no express authority to reduce member contributions, much less eliminate them, to an underfunded pension plan. It analogizes these sections of the Third Class City Code to Section 6 of Act 600,[11] whereby townships, towns and boroughs are directly precluded from reducing or eliminating member contributions to a plan unless an actuarial study reflects that contributions from *neither* the members nor the municipality are required to keep the fund actuarially sound.

The FOP counters that Section 4301 of the Third Class City Code does not mandate employee contributions, but only sets limits in the event that contributions are made. 53 P.S. § 39301. It also maintains that Act 600 provisions, discussed and analogized by the City, are inapplicable to a Third Class City. We must agree. The language of the cited sections of the Third

---

**11.** Section 6 of Act 600, 53 P.S. § 772(c) states:

If an actuarial study shows that the condition of the police pension fund of any borough, town, township or regional police department is such that payments into the fund by members may be reduced below the minimum percentages hereinbefore prescribed, or eliminated, and that if such payments are

reduced or eliminated contributions by the borough, town, township or regional police department will not be required to keep the fund actuarially sound, the governing body of the borough, town, township or regional police department may, on an annual basis, by ordinance or resolution, reduce or eliminate payments into the fund by members. 53 P.S. § 772(c).

Class City Code expressly provides a contribution ceiling but contains no contribution floor, neither expressly nor by implication. Further, a perusal of the complete Third Class City Code reveals no reference to either specific permission or specific prohibition relevant to elimination of a member's contributions. We hold, therefore, because the City could, under the provisions of the Third Class City Code, voluntarily eliminate member contributions, the pension provision contained in the arbitration panel's award did not order the City to perform an illegal act.

## II. Act 600: Police Pension Fund Act

■ As to Section 6 of Act 600, 53 P.S. § 772, which the City essentially argues should be read *in pari materia* with the Third Class City Code to effectuate legislative intent, we must agree with the FOP that the provisions of Act 600 are inapplicable to the City. Section 1 of Act 600, 53 P.S. § 767, expressly limits the authority under that act to boroughs, towns, townships and regional police departments, and we therefore find that Act 600 is simply inapposite to the appeal presently before the Court.

## III. Act 205: The Municipal Pension Plan Funding Standard and Recovery Act

■ The City next asserts that the City's pension plan is a distressed plan[12] under Act 205, and argues that Act 205 prohibits alterations in the pension plan without adherence to certain statutory requirements, including an estimate of the effect of a proposed plan modification, that is, the cost to the plan in the future. The City argues that, in this case, no such cost estimate has been produced, nor was one

available to the arbitration panel, and therefore the arbitration panel exceeded its authority because it could not have voluntarily relieved the officers of a duty to contribute to the pension plan without following the statutorily prescribed procedures. It particularly directs this Court to *Doylestown v. Doylestown Police Ass'n*, 732 A.2d 701 (Pa.Cmwlth.1999), *petition for allowance of appeal denied*, 563 Pa. 666, 759 A.2d 388 (2000).

In *Doylestown*, the Borough of Doylestown and the Police Association were parties to a collective bargaining agreement that tied member contributions to the maximum permitted by Act 600. Contribution levels, under this agreement, were to be determined on an annual basis. In 1996, the plan actuary determined that contributions of 5% were required for the 1997 actuarial year. The Police Association disagreed, contending that the plan was actuarially sound and that no contributions were required of the members, and filed a grievance. When the parties were unable to resolve the grievance, it proceeded to arbitration.

Before the arbitrator, the Borough argued that the actuarial soundness of the plan was to be determined biannually through the Act 205 report, not annually as provided for in Act 600. Agreeing with the Police Association, the arbitrator reduced the minimum amount of member contributions to the police pension plan from 5% of the member's salary to 2½% of the member's salary. The Borough appealed the arbitration award to the Bucks County Court of Common Pleas arguing that the reduced percentage of member contributions was illegal because the Act 205 actuarial report indicated that member contributions were required at the level of

---

**12.** There is no evidence in the record to establish distress or the level of distress under

Section 602.

5%. Common Pleas agreed with the Borough and held that the arbitrator had exceeded his powers by reducing the member contributions to 2½% because the most recent Act 205 report determined that the plan was financially unsound.[13] The Police Association appealed to this Court.

On appeal, we held that the arbitrator exceeded his powers and the award required the Borough to perform an illegal act where, under Act 205, member contributions are to be set every two years based on the most recent Act 205 actuarial report. We further concluded that this level of contributions remains constant throughout the two-year period, regardless of whether the plan becomes financially sound during the intervening year.

The City asserts here, as did the Borough of Doylestown, that *Doylestown* stands for the proposition that the most recent Act 205 actuarial report must be utilized in determining whether a pension plan is actuarially sound.[14] It posits that, in the matter *sub judice*, the most recent Act 205 report, the only one entered into the record, demonstrates that the Police Pension Fund is underfunded by over $500,000.[15]

In contravention, the FOP contends that Common Pleas did not address the City's Act 205 issue because the City did not raise an Act 205 issue in Common Pleas and, therefore, it is waived. We find this argument by the FOP to be without merit as both parties briefed and argued the Act 205 issue before Common Pleas.

The FOP contends in the alternative that Act 205 is irrelevant to the matter before us, because under the narrow certiorari standard, a mistake of law *or fact* is not reversible error. Before Common Pleas, the FOP argued that, "if this arbitrator read this exhibit, this actuarial study, and believed that this study provided information to him that would reduce the benefit, that is not reversible error if it was a mistake of law or fact." (Notes of Testimony, dated October 4, 2000, pp. 26–27.)

In tandem with this argument, and in its brief to this Court, the FOP maintains that the Act 205 actuarial report served as the required "cost estimate" because it contained all relevant information with regard to the fund's actuarial health and its current funding requirements. It submits that the figures available to the arbitration panel demonstrate that the unfunded actuarial accrued liability need not be eliminat-

13. Section 302 of Act 205 provides, in pertinent part:
    The financial requirements of the pension plan for the following plan year shall be based on the most recent actuarial valuation report of the pension plan....
    53 P.S. § 895.302.

14. The term "actuarially sound" is not defined under Act 205, but is defined under Section 102 of the Pennsylvania Municipal Retirement Law, Act of February 1, 1974, P.L. 34, *as amended*, 53 P.S. § 881.102. That definition provides:
    "**Actuarially sound**" means a plan which is being operated under supervision of an actuary and which is being funded annually at a level not lower than the normal cost of the plan plus a contribution towards the

unfunded accrued liability sufficient to complete the funding thereof within thirty years of the effective date of the system. If the unfunded accrued liability is increased subsequent to the effective date of the system, such additional liability shall be funded within a period of thirty years from the effective date of the increase. If deemed advisable by the actuary, the initial liability and any increase thereof, may be combined and amortized over a period of years, not to exceed thirty.

15. The City contends that the arbitration panel was advised that the pension fund is even more underfunded than is stated in the 1999 Act 205 report.

ed immediately and asserts that the arbitration panel was not fiscally irresponsible as it considered the City's required contribution and available state funding in determining whether further member contributions were required. The FOP further argues that there was no increase in pension benefits that would result in a corresponding impact on the fund's actuarial health, so that no cost study was necessary. As to the relevance of *Doylestown* to the instant matter, the FOP counters that our decision in *Doylestown* is inapposite because *Doylestown* stands only for the proposition that, in Act 600 municipalities, where the Act 205 report reveals an underfunded plan, member contributions may not be eliminated; therefore, because the City of Butler is not an Act 600 municipality, *Doylestown* has no relevance.

We begin our analysis of this issue by reviewing, briefly, the statutory structure related to pension funds. The original Pension and Retirement Act, Act of May 24, 1893, P.L. 129, was amended by the Act of May 2, 1929, P.L. 1272, and pertained to all boroughs and cities of the Commonwealth, on a permissive basis. *See Eisenberger v. Police Pension Commission, City of Harrisburg,* 400 Pa. 418, 162 A.2d 347 (1960); *Bausewine v. City of Philadelphia,* 337 Pa. 267, 10 A.2d 446 (1939). These acts were the progenitors of Act 600. The original pension plan acts were repealed in 1931, insofar as they applied to third class cities, by the Third Class City Code. *Eisenberger.* Subsequently, the Municipal Police Retirement Law, Act of July 31, 1968, P.L. 944, established a police pension system that was to be administered on a state-wide basis. *City of Allentown v. Local 302, Int'l Ass'n of Fire Fighters,* 511 Pa. 275, 512 A.2d 1175 (1986). In 1984, the General Assembly enacted the previously referenced Municipal Pension Plan Funding Standard and Recovery Act, popularly called Act

205, as "[a]n Act mandating actuarial funding standards for **all** municipal pension systems; establishing a recovery program for municipal pension systems determined to be financially distressed; providing for the distribution of the tax on premiums of foreign fire insurance companies; and making repeals." 53 P.S. § 895.101 (emphasis added). Its purpose was to strengthen municipal pension plans "by requiring actuarially-based current funding standards and by establishing state-aided, voluntary remedial rules to aid seriously underfunded pension plans in achieving compliance with the standards." *City of Philadelphia v. District Council 33, American Federation of State, County & Municipal Employees, AFL–CIO,* 528 Pa. 355, 366, 598 A.2d 256, 261 (1991).

We agree with the City that our decision in *Doylestown* does apply to third class cities and is controlling here, and that the FOP has misapprehended our *Doylestown* analysis. *Doylestown* is not an Act 600 case; it is an Act 205 case. In *Doylestown,* we determined that the provisions of Act 205 required that an annual actuarial valuation be produced biannually (rather than the Act 600 requirement of an annual actuarial valuation), and mandated that Act 205 reports **only** may be utilized by a municipal participant to determine whether a pension fund is actuarially sound for purposes of adjusting the contributions of the police officers. The tenets and analysis applicable to *Doylestown* were not dependent on Doylestown's status as a borough, but on the requirements of Act 205 to all municipalities with a pension plan. Thus, it's directly translatable to cities of the third class.

Section 301(a) of Act 205 specifically details that its provisions supplant those of the local municipality and states:

Notwithstanding any provision of law, municipal ordinance, municipal resolution, municipal charter, pension plan agreement or pension plan contract to the contrary, the applicable provisions of this chapter **shall apply** to any municipality which has established and maintains, directly or indirectly, a pension plan for the benefit of its employees, irrespective of the manner in which the pension plan is administered, and to the respective pension plan.

53 P.S. § 895.301(a) (emphasis added). Further, Sections 305(a) and (c) of Act 205 **require** the provision of a cost estimate to reflect the impact on the actuarial soundness of the plan regarding any benefit plan modification.[16] Under Section 607(c) of Act 205, member contributions *may* be specified by the municipality, are subject to collective bargaining, and are adjusted for certain specified events, such as an enhancement of the benefits available under the plan.[17] It is clear from this statutory language that member contributions are a bargainable issue and that, **under some circumstances,** the City could voluntarily eliminate the contributions. But, it is also clear that any change in the formulation of the pension fund, whether that change results from benefit enhancements or an alteration in the funding mix, requires the consideration of a cost estimate as provided by Section 305(a), and an actuarial report under Section 302 that the pension plan is actuarially sound.

We, therefore, find that the arbitration panel exceeded its authority in mandating a reduction in member contributions to zero without adherence to the provisions of Act 205, specifically Section 302 of the Act and *Doylestown,* and thus the arbitration panel directed the City to undertake an illegal act.[18] Accordingly, we reverse the order of the Court of Common Pleas, con-

---

16. Sections 305(a) and (d) provide:

> (a) **Presentation of cost estimate.**—Prior to the adoption of any benefit plan modification by the governing body of the municipality, the chief administrative officer of each pension plan **shall** provide to the governing body of the municipality a cost estimate of the effect of the proposed benefit plan modification.
>
> * * * *
>
> (d) **Defined contribution plan.**—If the pension plan is a defined contribution benefit plan which is either self-insured in whole or in part or fully insured by an authorized insurance carrier, the cost estimate shall be prepared by any qualified person and **shall be a comparison of current and future contribution rates.**

53 P.S. §§ 895.305(a), (d) (emphasis added).

17. Section 607 states:

> (1) The municipality may specify total member contributions to the pension plan. . . .
>
> * * * *
>
> (3) For a defined benefit plan which is improved subsequent to the effective date of this subsection and which benefit plan improvement causes an increase in the normal cost of the benefit plan ... [t]he increased total member contribution shall not be less than 30% of ... the normal cost of the improved benefit plan ... as reported in the most recent actuarial valuation report of the improved pension plan.
>
> * * * *
>
> (6) The establishment of total member contributions pursuant to this subsection shall be within the scope of collective bargaining. . . .

53 P.S. § 895.607(c).

18. The record before us, and perforce before Common Pleas, is particularly sparse. It contains only the arbitration award, the actuarial report, the oral arguments of attorneys for both sides, the briefs submitted to Common Pleas and Common Pleas' opinion and order. If the City has a relevant ordinance, it is not included and not mentioned. There were no witnesses who testified as to the soundness of the fund, the City's distress level determination, or the date of benefit plan improvements (other than an allusion to an increase of 100% in survivor benefits in the recent past).

sistent with our opinion in *Doylestown*, and set aside paragraph 7 of the award.

### ORDER

**NOW,** July 18, 2001, the order of the Court of Common Pleas of Butler County in the above-captioned matter is hereby reversed, and paragraph 7 of the subject arbitration award is hereby set aside.