**CITY OF LANCASTER, Appellant,**

**v.**

**FIRE FIGHTERS LOCAL UNION NO. 319.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2003.
Decided Oct. 23, 2003.

Christopher S. Underhill, Lancaster, for appellant.

Thomas W. Jennings, Philadelphia, for appellee.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The City of Lancaster (City) appeals from an order of the Court of Common Pleas of Lancaster County (trial court) denying the City's petition to vacate, in part, an arbitration award. For the reasons that follow, we affirm.

On November 27, 2001, a panel of arbitrators (Panel) issued an interest arbitration award (Award) pursuant to the law commonly referred to as Act 111[1] in a dispute between the City and Fire Fighters Local Union No. 319 (Union) regarding negotiation of the terms of the parties' collective bargaining agreement which had expired on December 31, 1999. The Award included a provision instituting a deferred retirement option program (DROP) for the benefit of the Union members.

The DROP permits an active member of the bargaining unit (participant), who is otherwise eligible to begin receiving pension benefits, to continue employment for a period not to exceed five years and deposit deferred retirement benefits into an interest-bearing account. The City ceases crediting the participant additional compensation and service credit for retirement benefit purposes and the participant continues contributing to the pension plan while participating in the DROP. At the conclusion of the extended employment period, the participant is required to terminate service, the DROP account balance is paid to the participant and normal monthly pension benefit payments begin. (R.R. 4a–6a)

The City sought to vacate the DROP portion of the Award by filing with the trial court a petition for review, followed by a motion for summary judgment. On January 17, 2003, after oral argument, the

---

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

trial court denied the City's motion and issued an order granting summary judgment in favor of the Union. This appeal followed.

The issue before us is whether the trial court erred in determining that the City possesses implied authority to implement a DROP award issued pursuant to Act 111 interest arbitration. Act 111 governs the collective bargaining procedures between these parties. The scope of review of an Act 111 interest arbitration award is limited certiorari. *City of Butler v. Butler Police Dep't*, 780 A.2d 847 (Pa. Cmwlth.2001). Therefore, this Court is limited to deciding questions regarding (1) the jurisdiction of the arbitrators, (2) the regularity of the proceedings, (3) an excess of the arbitrator's powers, and (4) a deprivation of constitutional rights. *Id.* An Act 111 arbitration award may not be set aside unless the arbitration panel mandates the performance of an illegal act or grants an award addressing issues beyond the terms and conditions of employment. *Id.*

Sections 4320 through 4328 of The Third Class City Code (Code)[2] govern the manner in which the City is to provide pension benefits to its firefighters. These provisions set forth how pension funds shall be maintained, the amount which firefighters must contribute, the service time required for vesting, the minimum retirement age, and the amount of retirement pension payments. 53 P.S. §§ 39320–39328. The parties agree that there is no express statutory provision authorizing adoption of a DROP in the Code.

Since a municipality is created by the Commonwealth, the City argues that it possesses no inherent powers absent express or implied authority given by the Legislature and that the pension provisions of the Code give it neither express nor implied authority to adopt a DROP.[3] The City further maintains that authority to implement a DROP, which essentially requires the City to pay non-retired firefighters deferred retirement benefits while they are still employed, cannot be implied from the pension provisions of the Code because they deal only with eligibility for, and payment of, pension benefits upon actual retirement.

The Union characterizes a DROP as merely an alternative form of distributing a vested pension benefit. Since the Code mandates that the City provide pension benefits to its firefighters, the Union reasons that the power to implement the DROP method of pension distribution is implied by necessity in the Code. The Union also asserts that since the pension provisions of the Code are silent as to the method of pension benefit distribution, the Code does not preclude the City from implementing a DROP.[4]

---

2. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 39320–39328.

3. The trial court rejected this argument based on the theory of "municipal authority by necessary implication," which provides that courts may imply the existence of municipal powers not specifically expressed in a statute if they are necessary to carry out the provisions of that statute. *Naylor v. Tp. of Hellam,* 565 Pa. 397, 773 A.2d 770 (2001).

4. We disagree with the Union's contention that when we reversed the court of common pleas solely on the basis of insufficient evidence in *City of Erie v. Haas Mem'l Lodge # 7,* 811 A.2d 1071 (Pa.Cmwlth.2002), *appeal denied,* 573 Pa. 692, 825 A.2d 640 (2003), we impliedly affirmed the legality of DROP systems in general. The issue raised by the City of Erie in *Haas* was whether an arbitration panel complied with the specific requirements of the Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, *as amended,* 53 P.S. §§ 895.101–895.803, commonly referred to as Act 205 (detailing actuarial funding standards for municipal pension systems) in awarding a DROP. Rather, we merely determined that the

The only authority cited by the City in support of its challenge to the DROP Award are two cases generally indicating that courts are reluctant to find authority for municipal acts by necessary implication. *See Naylor* (municipalities may do only those things that the Legislature has expressly or by necessary implication placed within their power); *Denbow v. Borough of Leetsdale,* 556 Pa. 567, 729 A.2d 1113 (1999) (any doubt as to the existence of implied municipal authority should be resolved by the courts against its existence).

■ As an Optional Third Class City governed by the Optional Third Class City Charter Law (Optional Code),[5] however, the City possesses broad powers of self-government subject only to express or implied prohibitions.[6] *Greenberg v. City of Bradford,* 432 Pa. 611, 248 A.2d 51 (1968).

Therefore, we believe the appropriate inquiry here is not whether the City possesses implied authority under the Code to implement the DROP, but rather whether there is any Code provision that can be interpreted as prohibiting the City from doing so by implication. As the City has failed to identify any provision under the Code, or any other statute, which expressly or implicitly precludes it from implementing the DROP, we are compelled to affirm the order of the trial court.

Given the substantial deference required in reviewing Act 111 arbitration awards, we find that the City has failed to establish that the Panel exceeded its authority or mandated the performance of an illegal act under the Code by awarding the DROP in this case. Accordingly, we affirm the order of the trial court.

### ORDER

AND NOW, this 23rd day of October, 2003, the January 17, 2003 order of the Court of Common Pleas of Lancaster County is hereby affirmed.

---

record was insufficient to support the common pleas court's conclusion that the award did not violate the provisions of Act 205. Since the City here did not raise an argument based on Act 205, *Haas* is inapplicable to the case *sub judice.*

**5.** Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§ 41101–41625.

**6.** Section 304 of the Optional Code, 53 P.S. § 41304, provides:

The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to cities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the city.