**UPPER MERION TOWNSHIP**

v.

**UPPER MERION TOWNSHIP POLICE OFFICERS,**
**Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2006.
Decided Dec. 29, 2006.

Richardson Todd Eagen, Harrisburg, for appellant.

John Patrick McLaughlin, Philadelphia, for appellee.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

In this appeal, the Upper Merion Township Police Officers (Union) challenge the order of the Court of Common Pleas of Montgomery County (trial court) granting Upper Merion Township's (Township) Petition for Review and to Vacate the Arbitration Award. The following issue is presented for our review: whether the retroactive increase of survivor benefits under a grievance arbitration award triggers the reporting mandates of the Municipal Pension Plan Funding Standard and Recovery Act[1] (Act 205). We are also asked to address the application of the Act of April 17, 2002, P.L. 239[2] (Act 30), which amended the Police Pension Fund Act[3] (Act 600) and requires benefits to be paid to surviving spouses, to the facts here.

In an effort to strengthen pension plans of municipalities across the Commonwealth, the General Assembly passed Act 205 in 1984 and set forth a statutory regime dictating various funding and actuarial requirements for municipal pension plans to follow. Under Section 201 of Act 205, municipalities must file an actuarial valuation report biennially. 53 P.S. § 895.201. Prior to adopting any modifications to the pension plan, the municipality must receive "a cost estimate of the effect of the proposed benefit plan modification."

---

1. Act of Dec. 18, 1984, P.L. 1005, *as amended,* 53 P.S. §§ 895.101–895.803.

2. 53 P.S. §§ 767, 771, 772.

3. Act of May 29, 1956, P.L. (1955) 1804, *as amended,* 53 P.S. §§ 767–778.

53 P.S. § 895.305(a).[4] Act 205 also contains a preemption provision:

> Notwithstanding any provision of law, municipal ordinance, municipal resolution, municipal charter, pension plan agreement or pension plan contract to the contrary, the applicable provisions of this chapter shall apply to any municipality which has established and maintains, directly or indirectly, a pension plan for the benefit of its employees, irrespective of the manner in which the pension plan is administered, and to the respective pension plan.

Section 301(a) of Act 205, 53 P.S. § 895.301(a). The General Assembly declared its concern that the failure of municipalities to comply with these standards "threatens serious injury to the affected municipal pension plan, to the entire system of public employee pension plans in the Commonwealth and to the Commonwealth itself." 53 P.S. § 895.306(a).

In 2002, the General Assembly amended Act 600 with the passage of Act 30. Under the statute, a surviving spouse of a retired police force member is now entitled to receive a pension of at least fifty-percent of the pension the deceased member either received or would have received if the member was in retirement when he died. Section 1 of Act 30, 53 P.S. § 767(4).[5] Act 30 also has a retroactive effect: "The amendment of section 1 ... insofar as the amendment affects the benefits available to surviving spouses shall apply to surviving spouses whose spouse died on or before the effective date of this act and who were not remarried as of said date." Section 4 of Act 30.

Regarding the facts here, the Township and the Union entered into a collective bargaining agreement (CBA) in 1982, which, for the first time, provided enhanced benefits for surviving spouses. The provision conferred a monthly pension benefit, for surviving spouses and dependent children of the deceased member, of fifty-percent of what the deceased member received or would have received had the member been retired at the time of death.

---

4. Section 305(a) of Act 205, 53 P.S. § 895.305(a), reads in its entirety: "Prior to the adoption of any benefit plan modification by the governing body of the municipality, the chief administrative officer of each pension plan shall provide to the governing body of the municipality a cost estimate of the effect of the proposed benefit plan modification." The cost estimate must be:

> complete and accurate and shall be presented in a way reasonably calculated to disclose to the average person comprising the membership of the governing body of the municipality, the impact of the proposed benefit plan, the modification on the future financial requirements of the pension plan and the future minimum obligation of the municipality with respect to the pension plan.

Section 305(e) of Act 205, 53 P.S. § 895.305(e).

Section 302(b)(1) of Act 205, 53 P.S. § 895.302(b)(1), also provides: "[t]he financial requirements of the pension plan for the following plan year shall be based on the most recent actuarial valuation report of the pension plan prepared pursuant to Chapter 2 [of Act 205]."

5. Section 1 of Act 30, 53 P.S. § 767(4), reads:

> The surviving spouse of a member of the police force or a member who retires on pension who dies or if no spouse survives or if he or she survives and subsequently dies, then the child or children under the age of eighteen years or, if attending college, under or attaining the age of twenty-three years, of a member of the police force or a member who retires on pension who dies, shall, during her lifetime in the case of a surviving spouse or until reaching the age of eighteen years or, if attending college, under or attaining the age of twenty-three years in the case of a child or children, be entitled to receive a pension calculated at no less than fifty per centum of the pension the member was receiving or would have been receiving had he been retired at the time of his death.

(Arbitration Opinion and Award, Mar. 7, 2005 (Award), at 8–9; R.R. 21a–22a.)

In August, 2003, after the passage of Act 30, the parties entered into a six-year CBA beginning on January 1, 2003 and ending on December 31, 2008. They agreed to increase the survivor's benefit from fifty-percent of the deceased member's monthly pension to one hundred-percent:

> (c) If a MEMBER dies and is survived by a spouse or dependent children, after having become eligible to receive a pension benefit, (i.e. he/she was eligible because (1) he/she was already receiving a pension; (2) he/she met the AGE and SERVICE requirements, but he/she had not yet retired), then a monthly pension benefit shall be provided.
>
> The amount of the monthly pension benefit shall be 100% of the pension the MEMBER was receiving or would have been entitled to receive if he/she had been retired at the time of his/her death. Any form of survivors['] benefits shall be offset in full by any Workers['] Compensation benefits that are received by the survivors.

(CBA at 18, ¶ 13b(7)(c); R.R. 46a.) [6]

■ In February, 2004, the Union filed a grievance, alleging the Township violated the CBA by refusing to apply the increased survivor's benefit retroactively to surviving spouses of members who had retired before January 1, 2003. In October, 2004, the Township and the Union

entered into grievance arbitration proceedings.[7] The Arbitrator ultimately agreed with the Union in March, 2005, sustained the grievance, and directed the Township to retroactively apply the enhanced survivor's benefit under the CBA. For support, the Arbitrator cited a common paragraph found in both a bargaining memorandum from the Township to the Police Bargaining Committee dated November 18, 2002, and a memorandum from the Union Negotiating Committee to the Township dated February 4, 2003, which read: "[b]enefits relating to surviving spouses shall apply to those surviving spouses whose spouse died on or before the effective date of Act 30 and who were not remarried as of that date." (Award at 9; R.R. 22a.) The Arbitrator found this bargaining agreement between the parties undercut the Township's argument that the parties never negotiated a retroactive application of the enhanced survivor's benefit. The Arbitrator also rejected the Township's contention that the term "member," under the pension plan, only encompassed full-time officers employed by the Township because, in order for a member to receive a pension under the CBA, the member would already have to be retired; invariably, the term would include retired as well as full-time officers.

In May, 2005, the Township filed, with the trial court, a Petition for Review and to Vacate the Arbitration Award arguing, among other things, that the Arbitrator

---

**6.** This CBA clause also provided for a pre-retirement survivor benefit: "In the event a MEMBER is killed in service, his/her spouse, shall be entitled to a monthly pension, payable until his/her death, equal to 100% of the salary the MEMBER was receiving at the time of his/her death." (CBA at 18, ¶ 13b(7); R.R. 46a.)

**7.** Generally, grievance arbitrations involve disputes between the employer and the union

over the interpretation of an *existing* agreement. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5,* 677 A.2d 1319, 1323 n. 4 (Pa.Cmwlth.1996) (quoting *Moon v. Police Officers of Moon,* 508 Pa. 495, 501 n. 5, 498 A.2d 1305, 1308 n. 5 (1985)). Interest arbitrations, on the other hand, are utilized to resolve an impasse in collective bargaining over the terms of a *new* contract. *Id.*

exceeded his jurisdiction and power. After holding oral arguments, the trial court agreed and granted the Township's Petition in April, 2006. In his Pa. R.A.P. 1925(a) opinion, Judge Bertin held the Award would "compel the township to modify its pension plan without first obtaining the actuarial cost estimate and actuarial valuation report required by [Act 205]." (Trial Ct. Op. at 2.) Failing to find an Act 205 actuarial study in the record, the trial court considered this failure "fatal to the arbitrator's award," because Act 205 clearly mandates a cost estimate before a municipality can modify its pension plan. (Trial Ct. Op. at 3, 5.) Citing *Borough of Ellwood City v. Ellwood City Police Department*, 573 Pa. 353, 364–65, 825 A.2d 617, 624 (2003), the trial court held the courts are without jurisdiction to enforce a CBA which contravenes the requirements of Act 205. (Trial Ct. Op. at 5.) Analyzing *Ellwood* and several cases from this Court,[8] Judge Bertin held the failure to comply with an Act 205 actuarial study renders the Award illegal, compelling the Township to perform an illegal act, and amounts to an action which exceeded the powers of the Arbitrator. This appeal followed.

■■■■ Because this Award falls under the auspices of what is commonly referred to as the Policemen and Firemen Collective Bargaining Act (Act 111),[9] our review is dictated by the Pennsylvania Supreme Court's decision in *Washington Arbitration Case*, 436 Pa. 168, 174, 259 A.2d 437, 441 (1969), which outlined a narrow *certiorari* scope of review. We may only review for: (1) questions of jurisdiction; (2) regularity of the proceedings below; (3) questions of excess in the exercises of powers; and (4) constitutional questions. *Id; Moon v. Police Officers of Moon*, 508 Pa. 495, 500 n. 4, 498 A.2d 1305, 1307 n. 4 (1985); *Pa. State Police v. Pa. State Troopers' Ass'n*, 540 Pa. 66, 71, 656 A.2d 83, 85 (1995); *see also Fraternal Order of Police, Lodge 5 v. City of Philadelphia*, 160 Pa.Cmwlth. 409, 635 A.2d 222, 228 (1993). Narrow *certiorari* precludes review of questions of law. *Appeal of Upper Providence Police*, 514 Pa. 501, 513 n. 4, 526 A.2d 315, 321 n. 4 (1987).

Before this Court, the Union argues the Township is estopped from raising illegality as a defense to the Award because the Township expressly agreed to the provision which the Arbitrator merely interpreted (as opposed to an interest arbitration award that forcibly resolves an impasse in collective bargaining), and Act 30 mandates survivor benefits for existing spouses as well as spouses of members who previously retired. The Union distinguishes the holding of *Ellwood City* and asserts that *Ellwood City* merely addressed whether the arbitrator properly defined "actuarial soundness" under Act 205, not whether the arbitrator exceeded his authority by interpreting a contract provision. The Union further distinguishes the remaining cases cited by the trial court by noting that none of them involved the application of the survivor benefit as required by Act 30. The Union asks this Court to reverse.

---

**8.** These cases include: *Northampton Twp. v. Northampton Twp. Police Benevolent Ass'n*, 885 A.2d 81 (Pa.Cmwlth.2005), *pet. for allowance of appeal denied*, 588 Pa. 753, 902 A.2d 1243 (2006); *City of Erie v. Int'l Ass'n of Firefighters Local 293*, 836 A.2d 1047 (Pa. Cmwlth.2003); *City of Butler v. Fraternal Order of Police, Lodge #32*, 780 A.2d 847 (Pa. Cmwlth.2001); and *Borough of Doylestown v. Doylestown Borough Police Ass'n*, 732 A.2d 701 (Pa.Cmwlth.1999).

**9.** Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10.

In response, the Township counters that the trial court properly vacated the Arbitrator's decision because the Award violated Act 205 and exceeded the Arbitrator's power. Contrary to the Union's position, the Township claims Act 205 applies to both interest and grievance arbitration proceedings. Furthermore, the Township asserts that Act 30 only requires a fifty-percent pension benefit, a mandate the Township fully complied with *before* the enactment of Act 30. Citing Ellwood City, the Township argues an arbitrator may only require a public employer to perform actions that it may do voluntarily. Here, by requiring the retroactive increase of the survivor benefit to 100% without the presence of an actuarial study per Act 205, the Township claims the Arbitrator exceeded his power. The courts of this Commonwealth have repeatedly emphasized the language of Act 205 which requires actuarial soundness in police pension plans. While prior cases from this Court never addressed the intersection of Act 205 and Act 30, the Township contends their holdings continue to apply because Act 30 fails to alter the end result here, and the requirements of Act 205 remain in effect. If a conflict exists between Act 205 and a collective bargaining agreement, the Township argues Act 205 must prevail as held in Ellwood City. The Township also notes that whether it agreed to the retroactive effect of the provision fails to address the notion that it cannot agree to commit an unlawful act, which is exactly what the Arbitrator ordered in this case. Because there is no Act 205 actuarial study on the retroactive benefit enhancement, the Township asks this Court to affirm.[10]

The Pennsylvania Supreme Court in Ellwood City articulated the overriding effect of Act 205 when applied to a collective bargaining agreement. Recognizing that Act 205 applies notwithstanding any law or agreement to the contrary, the Court found "Act 205 requires that, in the event of an actual conflict between statute and a collective bargaining agreement, the statute must be given effect. . . ." *Ellwood City*, 573 Pa. at 362, 825 A.2d at 622. Moreover, the Court declared the policy considerations underlying the collective bargaining process must be subordinated to the General Assembly's intent for the "consistent application of minimum funding standards for municipal pension plans" under Act 205. *Id.* at 363, 825 A.2d at 623. Any bargaining or modification of pension plans must be met by a guarantee of actuarial soundness as "contemplated by Act 205." *Id.* at 364, 825 A.2d at 623–24. The Court held the arbitrator's definition of actuarial soundness contradicted the statutory requirements of Act 205, and the arbitrator's application of its definition exceeded his powers. *Id.* at 365, 825 A.2d at 624.

In several cases, this Court has repeatedly recognized the prevailing mandate of Act 205 over collective bargaining agreements. In *Borough of Doylestown v. Doylestown Borough Police Association*, 732 A.2d 701, 704 (Pa.Cmwlth.1999), we held the arbitrator exceeded her power by reducing pension member contributions under the collective bargaining agreement when the most recent Act 205 actuarial report found the borough's pension plan underfunded. Because the Act 205 report indicated a plan deficit, the arbitrator ille-

---

10. In its brief to this Court, the Township also raises two arguments it brought before the trial court: (1) Act 30 neither authorizes the retroactive application of survivor benefits nor mandates an increase of benefits to 100%; and (2) the Arbitrator lacked jurisdiction to hear the grievance because surviving spouses of retired police officers are not members of the bargaining unit, and the Township holds no bargaining obligation to them. Because of our holding in this case, we do not reach these issues.

gally ordered the borough to reduce member contributions. Id. In *City of Butler v. Fraternal Order of Police, Lodge # 32*, 780 A.2d 847, 855 (Pa.Cmwlth.2001), we held an interest arbitration award that eliminated pension contributions went beyond the powers of the arbitration panel because it failed to adhere to Section 302 of Act 205, which requires a cost estimate before any modification of a pension plan. Also, *City of Erie v. International Association of Firefighters Local 293*, 836 A.2d 1047, 1052 (Pa.Cmwlth.2003), found the arbitration panel's award of a Deferred Retirement Option Program to be illegal when the record failed to contain a proper cost estimate demonstrating actuarial soundness consistent with Act 205. Lastly, this Court, in *Northampton Township v. Northampton Township Police Benevolent Association*, 885 A.2d 81, 83 (Pa.Cmwlth. 2005) (citing *City of Erie v. Haas Memorial Lodge # 7*, 811 A.2d 1071 (Pa.Cmwlth. 2002)), *petition for allowance of appeal denied*, 588 Pa. 753, 902 A.2d 1243 (2006), explicitly held "Act 111 awards modifying police pension plans must be made in compliance with Act 205." Because the arbitration panel's three-percent cap on pension contributions did not have the benefit of a proper cost estimate report under Act 205, we held the panel exceeded its powers. *Id.* at 85.

■ Here, the trial court properly applied the requirements of Act 205. Furthermore, Act 30, as applied to these facts, fails to alter the application of Act 205. By its plain language, Act 30 now requires a fifty-percent pension benefit for surviving spouses, a benefit with which the Township had previously complied under its previous collective bargaining agreement *before* the enactment of Act 30. The language in *Ellwood City* is applicable here, emphasizing the policy goal of Act 205 to override collective bargaining agreements in an effort to promote municipal pension plan stability.

Furthermore, this Court's precedents are applicable as well, regardless of whether those cases directly addressed the survivor's benefit, and reinforce the need for a cost estimate demonstrating actuarial soundness before the modification of a covered pension plan. Here, the retroactive effect of the survivor benefit clearly impacts the Township's administration of the pension plan, whether the parties meant to have the CBA apply retroactively or not, because in both cases, the required Act 205 cost estimate report is lacking. Contrary to the Union's assertions, the Township is not estopped from arguing the illegality of the retroactive survivor benefit award because even if it did agree to the provision, the Township may not permissibly agree to perform an illegal act.[11] The

11. At oral argument, counsel for the Union raised its concern that if this Court adopted the trial court's position, the Township would be allowed to obtain bargaining concessions from the Union and subsequently claim the illegality of its promises to the Union before a reviewing court despite the Township's earlier agreement. This possible bargaining tactic would, according to the Union, offend fundamental principles of fairness and good faith underlying the collective bargaining process. While this Court certainly recognizes the potential for abuse in such a scenario, our holding here is limited to an Act 205 context. In *Fraternal Order of Police, E.B. Jermyn Lodge*

*# 2, by Tolan v. Hickey*, 499 Pa. 194, 199, 452 A.2d 1005, 1008 (1982), a plurality of the Pennsylvania Supreme Court held a public employer, who agreed to a provision which, the union argued, fell beyond the appropriate subject matter for collective bargaining, may not "belatedly avoid compliance with a term of a bargaining agreement it voluntarily agreed to during the bargaining process and thereby secure an unfair advantage in the bargaining process." Such an action would be "inimical to the integrity of the bargaining process and [would undermine] the harmonious relationship [the collective bargaining process] was designed to foster." *Id.* at 198,

Arbitrator effectively ordered the Township to engage in an unlawful act by retroactively increasing the survivor benefit without an Act 205 report, rendering the Award beyond the scope of the Arbitrator's power.

Because the trial court properly vacated the Award due to the lack of an Act 205 actuarial study, the order of the trial court is affirmed.

### ORDER

NOW, December 29, 2006, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby **AFFIRMED.**

452 A.2d at 1007. However, the Court in Ellwood City distinguished *Hickey* and found the directive of Act 205:

> does not merely prohibit the making of a contrary agreement or one that exceeds the permissible subject-matter scope of bargaining. Rather, Act 205 requires that, in the event of an actual conflict between the statute and a collective bargaining agreement, the statute must be given effect....

*Ellwood City*, 573 Pa. at 362, 825 A.2d at 622. Due to the superseding effect of Act 205 in this particular context, the lack of an actuarial report is ultimately fatal to the Union's claim.