**CITY OF ERIE**

v.

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 293, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2003.
Decided Nov. 20, 2003.

Richard G. Poulson, Philadelphia, for appellant.

Gerald J. Villella, Erie, for appellee.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The International Association of Firefighters, Local 293 (Union) appeals from an order of the Court of Common Pleas Erie County which granted the City of Erie's (City) petition to vacate an arbitration award in part. We affirm.

The Union is the certified collective bargaining representative for a unit of employees in the City's fire department. The City's and the Union's most current collective bargaining agreement expired on December 31, 2001. The parties entered into

interest arbitration pursuant to what is commonly known as Act 111[1] and an award was issued by the arbitration panel on May 9, 2002. The arbitration panel awarded a Deferred Retirement Option Program (DROP) for the fire fighters' pension fund.

Under the DROP, a fire fighter who is eligible for retirement may choose to participate in the DROP and in exchange, s/he agrees to retire no later than three years after s/he enters the DROP. In other words, the fire fighter may choose to remain actively employed for up to three years after s/he enters the DROP. The fire fighter, however, is treated for fiscal purposes as having retired on the date of declaration, with pension benefits that the fire fighter would have received if s/he actually retired accruing interest on the dollar worth of his or her accumulated contributions during the three year DROP period. Additional pension benefit accruals and employee contributions to the pension plan would cease on the DROP date. At the time of the fire fighter's termination

from employment, s/he receives a lump sum payment of the pension benefits accumulated during the DROP period, with interest at six percent. The fire fighter will also begin to collect a pension at the rate s/he would have received had s/he actually retired at the beginning of the DROP period. The monthly pension would increase only as a result of a cost of living adjustment in effect for the pension plan on the DROP date.

■ On June 6, 2002, the City filed a petition to vacate the arbitration award in part (petition) and the matter was decided by the trial court on stipulation and briefs filed by the parties. On March 28, 2003, the trial court entered an order granting the City's petition.[2] The trial court determined that the actuarial cost estimate reports submitted by both parties were insufficient to legally satisfy the requirements of Act 205.[3]

■ The trial court stated that while both reports estimate the cost of the proposed change, neither explicitly addresses

---

1. Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1–217.10.

2. The trial court originally entered an order in this matter on October 4, 2002 denying the City's petition and the City appealed to this Court. However, in a January 10, 2003 opinion in support of its order filed pursuant to Pa.R.A.P.1925(b), the trial court determined that the arbitrators exceeded their authority by requiring the City to modify its pension plan without the benefit of legally required information. Based on the apparent conflict between the trial court's October 4, 2002 order and the trial court's opinion in support thereof, the City filed a motion with this Court to remand the matter to the trial court for proceedings consistent with its January 10, 2003 opinion. By order dated February 12, 2003, this Court granted the City's motion and remanded the matter to the trial court for further proceedings pursuant to the trial court's January 10, 2003 opinion. On remand, the trial court, by order of March 28,

2003, rescinded its October 4, 2002 order and granted the City's petition.

3. The Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, 53 P.S. §§ 895.101–895.803. The General Assembly enacted Act 205 as "an Act mandating actuarial funding standards for all municipal pension systems; establishing a recovery program for municipal pension systems determined to be financially distressed; providing for the distribution of the tax on premiums of foreign fire insurance companies; and making repeals." 53 P.S. § 895.101. Its purpose was to strengthen municipal pension plans "by requiring actuarially-based current funding standards and by establishing state-aided, voluntary remedial rules to aid seriously under funded pension plans in achieving compliance with the standards." *City of Philadelphia v. District Council 33, American Federation of State, County & Municipal Employees, AFL–CIO*, 528 Pa. 355, 366, 598 A.2d 256, 261 (1991).

"the modification on the future financial requirements of the pension plan and the future minimum obligation of the municipality with respect to the pension plan." *See* Section 305(e) of Act 205, 53 P.S. § 895.305(e). Moreover, the trial court determined that there did not appear to be an actuarial report under Section 302 of Act 205, 53 P.S. § 895.302, indicating that the plan is actuarially sound, which would allow the City to determine the impact of the modification on the minimum funding requirements of Section 302. Therefore, the trial court concluded that it appeared that the arbitrators' award would require the City to modify its pension plan without the benefit of legally required information and that was not within the arbitrators' authority. This appeal by the Union followed.[4]

Herein, the Union raises the following issues for our review:

1. Whether the parties satisfied the pre-modifications requirements of Act 205 where both the City and the Union presented several witnesses and introduced documentary evidence concerning the actuarial costs associated with the proposed pension modification.

2. Whether the trial court erroneously determined that the Act 111 panel required the City to engage in an unlawful pension modification.

3. Whether the trial court erroneously determined that the Act 111 panel exceeded its authority under Act 111.

In support of its appeal, the Union argues that the arbitration panel acted within its authority in awarding the DROP benefit. The Union contends that the City and the Union both presented the panel with evidence sufficient to satisfy the pre-modification requirements of Act 205. Specifically, updated actuarial exhibits, which were provided by the Union's witness, and estimates of the actuarial impact, which were provided by both the Union's and the City's witnesses. The Union argues that the panel was free to choose between these estimates. Finally, the Union contends that the parties presented the panel with actuarial reports that the pension plan was actuarially sound as of January 1, 2001; therefore, the trial court's observation that the record does not "appear" to contain actuarial reports is mistaken.

In response, the City argues that the trial court correctly determined that the Union must prove the absence of a severe impact on the actuarial soundness of the plan in order for an arbitration award ordering the modification to comply with Act 205. The City contends that the enhancement of a pension plan must be supported by sufficient evidence to establish that the plan is and will remain actuarially sound with the modification. Therefore, the City contends, the trial court properly reversed the award.

Pursuant to Section 301(a) of Act 205, the provisions of Act 205 apply to any municipality which has established and

---

4. When reviewing an arbitration award issued under the authority of Act 111, this Court's standard of review is limited certiorari, which permits an appellate court to consider questions concerning: (1) the arbitrator's jurisdiction; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) the deprivation of constitutional rights. *City of Butler v. Fraternal Order of Police, Lodge #32*, 780 A.2d 847 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 568 Pa. 620, 792 A.2d 1255 (2001). An arbitrator: (1) may not order the employer to perform an illegal act; (2) is limited to requiring that a public employer do that which it could do voluntarily; and (3) must craft an award that only encompasses the terms and conditions of employment. *Id.* An error of law alone is not sufficient to reverse an award under this narrow standard of review. *Id.*

maintains a pension plan for the benefit of its employees. 53 P.S. § 895.301(a). Section 306(a) of Act 205 declares the legislative finding "that any actual or potential failure by a municipality to comply with the applicable funding standard established by this act threatens serious injury to the affected municipal pension plan, the entire system of public employee pension plans in the Commonwealth and to the Commonwealth itself." 53 P.S. § 895.306(a).

■ Prior to the adoption of any benefit plan modification by a municipality, Section 305 of Act 205 requires the presentation of a cost estimate of the effect of the proposed benefit plan modification. 53 P.S. § 895.305(a). The contents of any cost estimate shall be complete and accurate and shall disclose "the impact of the proposed benefit plan, the modification on the future financial requirements of the pension plan and the future minimum obligation of the municipality with respect to the pension plan." 53 P.S. § 895.305(e). As recently stated by our Supreme Court, "[w]hile Act 205 does extend a certain amount of latitude to municipalities by allowing benefit plan modification, it mandates that such change be preceded by a cost estimate describing the impact upon the plan." *Borough of Ellwood City v.*

*Ellwood City Police Department Wage and Policy Unit,* 573 Pa. 353, ——, 825 A.2d 617, 623 (2003) (citing 53 P.S. § 895.305(a), (e)).

■ In addition, Act 205 requires an actuarial report under Section 302, 53 P.S. § 895.302, that the pension plan is actuarially sound. *See Ellwood City; City of Butler v. Fraternal Order of Police, Lodge # 32,* 780 A.2d 847 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 568 Pa. 620, 792 A.2d 1255 (2001). Our Supreme Court in *Ellwood City* pointed out that "within the statutory framework, the General Assembly has bounded bargaining over and modification of pension benefits by a requirement of actuarial soundness as contemplated by Act 205 .... and has constrained the power of the judiciary accordingly." *Ellwood City,* at 573 Pa. ——, 825 A.2d at 623–24.

■ Herein, the Union argues that neither its actuarial witness nor the City's testified that the pension plan is or would be actuarially unsound.[5] In addition, the Union contends that the actuarial reports that were submitted show that the pension plan was actuarially sound as of January 1, 2001. However, our review of the record that was submitted to the trial court in this matter [6] reveals that none of the witnesses

---

5. As noted by this Court in *City of Butler,* "actuarially sound" is not defined in Act 205; however, this term is defined in Section 102 of the Pennsylvania Municipal Retirement Law, Act of February 1, 1974, P.L. 34, *as amended,* 53 P.S. § 881.102. That definition provides:

"Actuarially sound" means a plan which is being operated under supervision of an actuary and which is being funded annually at a level not lower than the normal cost of the plan plus a contribution towards the unfunded accrued liability sufficient to complete the funding thereof within thirty years of the effective date of the system. If the unfunded accrued liability is increased subsequent to the effective date of the system, such addition-

al liability shall be funded within a period of thirty years from the effective date of the increase. If deemed advisable by the actuary, the initial liability and any increase thereof, may be combined and amortized over a period of years, not to exceed thirty.

6. We note that the record upon which the trial court relied was an appendix to the Union's brief that contains certain portions of the testimony and the documentary evidence pertaining only to the DROP that was submitted before the arbitrators. Accordingly, the trial court did not have for review the entire record of the proceedings before the arbitrators. Consequently, neither did this Court.

testified that the pension plan is or would be actuarially sound after the modification of the plan to include the DROP. Moreover, the actuarial report[7] submitted by the Union reflects that there is an unfunded actuarial accrued liability with respect to the current pension plan of $843,000. According to this actuarial report, this unfunded accrued liability will increase to $2,263,000 under the proposed DROP modification. While the actuarial report states that the proposed DROP modification will require an increase of $187,000 in the City's financial requirement, the report itself does not indicate that the pension plan will remain actuarially sound in the future and the Union's witness never testified that such an increase will produce a pension fund that is actuarially sound for the current plan year or in the future.[8] Based on the requirements of Act 205, such a conclusion cannot be assumed.

Accordingly, we agree with the trial court that the record does not contain an actuarial report indicating actuarial soundness as contemplated by Act 205 which would allow the City to determine the impact of the modification on the minimum funding requirements of Section 302. Moreover, as stated by this Court in *City of Butler*, "Sections 305(a) and (c) of Act 205 require the provision of a cost estimate to reflect the impact on the actuarial soundness of the plan regarding any bene-

fit plan modification." *City of Butler*, 780 A.2d at 855. Again, while the Union's witness and the City's witness both testified with respect to the cost of the proposed plan modification, neither specifically testified how the increased costs of the DROP would impact the actuarial soundness of the current pension plan.

Therefore, the arbitration panel exceeded its authority when it awarded a DROP for the fire fighters' pension plan without compliance with the provisions of Act 205 and by so doing directed the City to undertake an illegal act. Thus, the trial court's order is affirmed.

### ORDER

AND NOW, this 20th day of November, 2003, the order of the Court of Common Pleas of Erie County in the above captioned matter is affirmed.

---

7. The actuarial report that was submitted by the Union is in reality an update to a January 1, 2001 actuarial study that was prepared for the plan. The report was modified to reflect a deposit of monies on January 19, 2002 to cover the current pension plan's unfunded actuarial liability as of January 1, 2001. Otherwise the January 1, 2001 actuarial valuation of the pension plan was not updated. *See* Reproduced Record at 116a.

8. In *City of Butler*, this Court explained that if there is a shortfall of the assets needed to pay benefits for current employees upon their retirement, an unfunded actuarial accrued liability exists and the actuarial valuation report will identify its amount and the payments required, in addition to normal costs, expenses, interest and employee contributions to overcome the unfunded actuarial accrued liability and produce a pension fund that is actuarially sound. *City of Butler*, 780 A.2d at 848 n. 2.