## CITY OF SCRANTON

v.

## FIRE FIGHTERS LOCAL UNION NO. 60, The Pennsylvania Department of Community and Economic Development and the Pennsylvania Economy League Central PA, LLC, as the Act 47 Coordinator for the City of Scranton.

Appeal of: The City of Scranton, Pennsylvania and The Pennsylvania Department of Community and Economic Development, and the Pennsylvania Economy League Central Pa., LLC, as the Act 47 Coordinator for the City of Scranton.

### City of Scranton

v.

### Fire Fighters Local Union No. 60.

Appeal of: Fire Fighters Local Union No. 60 of the International Association of Fire Fighters, AFL–CIO.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 14, 2013.

Decided Jan. 29, 2014.

Clifford B. Levine, Pittsburgh, for appellants Pennsylvania Department of Community and Economic Development and the Act 47 Coordinator for the City of Scranton.

Paul A. Kelly, Scranton, for appellant City of Scranton.

W. Timothy Barry, Pittsburgh, for appellant The Act 47 Coordinator for the City of Scranton.

Stephen J. Holroyd, Philadelphia, for appellee Fire Fighters Local Union No. 60.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

These consolidated cross-appeals involving the City of Scranton (City) and its fire fighters, originating in a November 2008 interest arbitration award (2008 Award) under the statute commonly known as the Policemen and Firemen Collective Bargaining Act or Act 111 (Act111),[1] return to us from our Supreme Court. On remand we address pension benefits.

## I. Background

### A. Procedure

By way of brief procedural summary, a series of interest arbitration awards between the City, designated in 1992 as a distressed municipality pursuant to the Municipalities Financial Recovery Act,[2] commonly known as Act 47, and its public safety employee unions resulted in a series of complex appeals beginning with appeals from the 2006 interest arbitration awards between the City and its police and fire unions. The primary issues in the appeals addressed the interplay between Act 47 and collective bargaining rights under Act 111. Those issues were ultimately resolved by our Supreme Court in *City of Scranton v. Firefighters Local Union No. 60*, 612 Pa. 23, 29 A.3d 773 (2011) (*Scranton Fire Fighters I–Supreme Court*), a case which dealt with the interest arbitration awards from 2006.

While the appeals from the 2006 awards were pending, a divided arbitration panel

---

1. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

2. Act of July 10, 1987, P.L. 246, *as amended,* 53 P.S. §§ 11701.101–11701.501.

entered the 2008 Award with which this opinion deals. We initially resolved the appeals involving the Fire Fighters Local Union No. 60 of the International Association of Fire Fighters (Fire Fighters) in a reported opinion, *City of Scranton v. Fire Fighters Local Union No. 60*, 8 A.3d 930 (2010), *vacated,* 614 Pa. 458, 38 A.3d 768 (2012) and *appeal denied,* 615 Pa. 758, 40 A.3d 123 (2012) (*Scranton Fire Fighters II–Commonwealth Court*). However, in *City of Scranton v. Fire Fighters Local Union No. 60*, 614 Pa. 458, 38 A.3d 768 (2012) (*Scranton Fire Fighters II–Supreme Court*), our Supreme Court granted the Fire Fighters' appeal, vacated our order, and remanded for consideration in light of *Scranton Fire Fighters I–Supreme Court.* The parties agree that the only unresolved 2008 Award issues involve pension benefits.

## B. 2008 Award

The 2008 Award amended Fire Fighters' pension plan. Section 7 of the Award ("*Pension Benefits* ") provided:

The Panel finds that the Revised Recovery Plan is silent on the issue of pension benefits and, as a result, there are no recommendations in the Plan on this issue which are binding on the Panel.

*Based upon the actuarial testimony presented during the hearing, a majority of the Panel is convinced that the following provisions may be awarded without detrimentally effecting [sic] the actuarial soundness of the City's pension plans as a whole.*

Accordingly, the Pension Plan shall be amended to provide for a normal pension to be paid in the following amount of average annual salary:

| Years of Service | Pct. of Average Year Salary |
| --- | --- |
| 20 years | 60 percent |
| 21 years | 62 percent |
| 22 years | 64 percent |
| 23 years | 66 percent |
| 24 years | 68 percent |
| 25 years | 70 percent |

*The calculation of average year salary shall include all longevity, overtime and other pay incentives.* In this connection, a majority of the Panel notes that the City currently bases its contributions to the Pension Plan on total compensation and agrees with the testimony of the Union's actuary that this change has little actuarial impact on the plan, and so finds as a matter of fact.

2008 Award, 11/19/08, Maj. Op., at 16 (holding in original, underline added).

## C. Common Pleas Court

The City, joined by intervenors,[3] sought to vacate the 2008 Award by petition filed in the Court of Common Pleas of Lackawanna County (common pleas court). Relevant here, they averred the retirement benefits award lacked support in the record and failed to comply with the requirements of the Municipal Pension Plan Funding Standard and Recovery Act,[4] commonly known as Act 205, and the applicable pension law.

3. The Pennsylvania Department of Community and Economic Development (DCED) and the City's Act 47 coordinator intervened before the common pleas court.

4. Act of December 18, 1984, P.L. 1005, *as amended,* 53 P.S. §§ 895.101–895.1131.

The common pleas court noted the City's arguments. It focused, however, on Section 1(b) of the Act of August 17, 1951, P.L. 1254, *as amended*, 53 P.S. § 30495(b) (1951 Municipal Pension Act; an act fixing the minimum pensions of police officers and fire fighters in certain cities), which provides (with footnote and emphasis added):

> A city of the second class A[5] may grant a cost of living increase to persons receiving an allowance from either the police or firemen's pension system, by reason of, and after termination of the services of any member of the retirement systems. *The total allowance from the systems shall not exceed one-half of the salary currently paid to a patrolman or fireman of the highest pay grade.*

Based on this provision, the common pleas court modified the 2008 Award to reflect a maximum retirement benefit of 50 percent of the salary paid to a patrolman of the highest grade.

Pertinent to the residual dispute, both the City and the Fire Fighters appealed the common pleas court's resolution of pension benefit issues to this Court. In *Scranton Fire Fighters II–Commonwealth Court*, we modified the common pleas court's order to vacate the pension benefit enhancement from the 2008 Award. The Fire Fighters appealed, and in *Scranton Fire Fighters II–Supreme Court*, the Supreme Court vacated our order and remanded for further consideration, without addressing the pension benefits. In essence, we reconsider the common pleas court's resolution of the pension benefits issues.

■■■ Appellate review of an Act 111 arbitration award is in the nature of narrow *certiorari*. *Scranton Fire Fighters I– Supreme Court.* It is limited to issues regarding: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceed his powers; and, (4) deprivation of constitutional rights. *Id.*

## II. Issues

The Fire Fighters question whether the common pleas court erred when it determined on its own motion that the pension benefit enhancement was unlawful, where the City did not raise the issue of illegality to the arbitrators or the common pleas court. The Fire Fighters also assert the Act 205 cost estimate provided by its actuary was sufficient to justify the pension benefits awarded, or, alternatively, the cost estimates provided by the City satisfy the requirements of Act 205.

The City argues that an illegal interest arbitration award satisfies the "excess of powers" aspect of narrow *certiorari* review. It also contends that it did not waive its right to challenge the admitted illegality of the pension benefit enhancement. Finally, the City asserts that the report of the Fire Fighters' actuary was insufficient under Act 205.

## III. Discussion

■■■ Chapter 3 of Act 205 governs minimum funding standards for municipal pension plans. *See* 53 P.S. §§ 895.301– 895.307. Compliance with Act 205 is mandatory. Section 301 provides (with emphasis added):

> (a) **Application.**—Notwithstanding any provision of law, municipal ordinance, municipal charter, pension plan agreement or pension plan contract to the contrary, *the applicable provisions of this chapter shall apply to any municipality which has established and*

5. Scranton is the Commonwealth's only city of the second class A.

*maintains, directly or indirectly, a pension plan for the benefit of its employees,* irrespective of the manner in which the pension plan is administered, and to the respective pension plan.

53 P.S. § 895.301(a). Thus, in the event of an actual conflict between Act 205 and a pension plan modification in a collective bargaining agreement, the requirements of Act 205 must be given effect. *Borough of Ellwood City v. Ellwood City Police Dep't Wage and Policy Unit,* 573 Pa. 353, 825 A.2d 617 (2003). Act 205 also applies to pension plan modifications in Act 111 arbitration awards. *Shippensburg Police Ass'n v. Borough of Shippensburg,* 968 A.2d 246 (Pa.Cmwlth.2009); *Upper Merion Twp. v. Upper Merion Twp. Police Officers,* 915 A.2d 174 (Pa.Cmwlth.2006); *Northampton Twp. v. Northampton Twp. Police Benevolent Ass'n,* 885 A.2d 81 (Pa. Cmwlth.2005).

▮ Sections 302(b) and (c) of Act 205 require an annual determination of the financial requirements of a municipal pension plan for the following year and describe how the municipality's minimum obligation (MMO) with respect to the pension plan is to be determined. 53 P.S. §§ 895.302(b) and (c). Of particular importance here, a Section 302 actuarial report must demonstrate that the pension plan is actuarially sound in order for the municipality to determine the impact of the proposed modification on the pension plan's minimum funding requirements. *Ellwood City Police Dep't; Erie v. Int'l Ass'n of Firefighters, Local 293,* 836 A.2d 1047 (Pa.Cmwlth.2003) (*IAFF Local 293* ). Section 302(d) requires that the municipality annually provide for the full amount of the MMO in its budget. 53 P.S. § 895.302(d).

Section 305 of Act 205, which requires an actuarial cost estimate for *any* benefit plan modifications, provides in part (with emphasis added):

(a) **Presentation of cost estimate.**— *Prior to the adoption of any benefit plan modification* by the governing body of the municipality, *the chief administrative officer of each pension plan shall provide to the governing body of the municipality a cost estimate of the proposed benefit plan modification.*

(b) **Defined benefit plan.**—If the pension plan is a defined benefit plan which is self-insured in whole or in part, the cost estimate shall be prepared by an approved actuary and shall either be the updated actuarial exhibits of an actuarial valuation report specified in Chapter 2 or an estimate of the expected actuarial impact attributable to the proposed benefit plan modification.

\* \* \*

(e) **Contents of cost estimate.**—*Any cost estimate of the effect of the proposed benefit plan modification shall be complete and accurate and shall be presented in a way reasonably calculated to disclose to the average person comprising the membership of the governing body of the municipality, the impact of the proposed benefit plan, the modification on the future financial requirements of the pension plan and the future minimum obligation of the municipality with respect to the pension plan.*

53 P.S. § 895.305(a), (b) and (e).

Here, the City asserts, there is no evidence of compliance with the specific requirements of Act 205. The record does not contain a "complete and accurate" cost estimate or actuarial report regarding the impact of the proposed maximum pension benefit increases. In addition, there is no evidence regarding the significant impact of including "all longevity, overtime and other pay incentives" as part of the salary

on which the pension benefit would be based.

Rather, the City contends that the Fire Fighters' actuary presented no evidence that the Firemen's Pension Plan was actuarially sound or that it would remain sound despite the proposed modifications. In fact, his report focused solely on the actuarial cost impact of the proposed pension amendments. He did not relate the costs he estimated to the soundness of the plan.

Citing this Court's decision in *Scranton Fire Fighters II–Commonwealth Court,* the City also asserts that the actuarial cost study required by Act 205 must be prepared with oversight from the pension plan's chief administrative officer. In the absence of the plan administrator's assessment of the cost estimate, the requirements of Act 205 are not satisfied.

The City therefore argues that the arbitration panel's determination that the increased benefits would have an acceptable limited impact is not supportable under Act 205. Rather, it has the effect of requiring an illegal act. Given the absence of any evidence required by Act 205, the City asserts the common pleas court erred in failing to vacate all pension benefit changes in the 2008 Award.

In response, the Fire Fighters contend they provided the actuarial evidence required by Section 305(b) of Act 205, 53 P.S. § 895.305(b), for a defined benefit plan. *See* DUDA ACTUARIAL CONSULTING, CITY OF SCRANTON FIREMEN'S PENSION PLAN ACTUARIAL COST STUDY AS OF JANUARY 1, 2007; Reproduced Record on Remand (R.R.) at 20a–24a. Citing Section 305(b) of Act 205 and its actuarial documentation, the Fire Fighters contend the record justified the increases in pension benefits. The Fire

Fighters further contend their actuarial data address all the requirements of Section 305(e) of Act 205, 53 P.S. § 895.305(e) (contents of cost estimate).

Moreover, the Fire Fighters take issue with the City's claim that the actuary who presents evidence required by Act 205 must be approved by the pension plan's chief administrative officer. Such a requirement is not expressed in the statute, and such a requirement would disrupt the collective bargaining process by making it more difficult for unions to present actuarial evidence. The Fire Fighters rely on cases where this Court countenanced evidence from "private" actuaries, but did not directly discuss the issue.[6]

Finally, the Fire Fighters argue that cost estimates made by a City witness, the actuarial consultant to the Firemen's Pension Plan, satisfied the requirements of Act 205 for pension plan modification. In this regard, the Fire Fighters make the following remarkable argument: "Nothing is [sic] Act 205 requires that the cost analysis *justify* the improvements to the pension plan. Rather, all that is required is that a cost analysis be *provided.*" Br. of Designated Appellee at 24 (emphasis in original).

■ There are several reasons why the 2008 Award of pension benefit enhancements is problematic. First and foremost, Scranton, a Class 2–A city, is limited to a total pension allowance of 50 percent of the salary currently paid to a patrolman or fire fighter, highest pay grade. 53 P.S. § 30495(b). As the common pleas court determined, the 2008 Award, in allowing a pension up to 70 percent of average salary, violated 53 P.S. § 30495(b).

The Fire Fighters do not dispute that the 2008 Award is illegal in this respect;

---

**6.** *See Erie v. Int'l Ass'n of Firefighters, Local 293,* 836 A.2d 1047 (Pa.Cmwlth.2003); *Borough of Doylestown v. Doylestown Borough Police Ass'n,* 732 A.2d 701 (Pa.Cmwlth.1999).

rather, they contend the City waived its legality argument by failing to assert it before the arbitrators. This argument is totally lacking in merit. *Chirico v. Bd. of Supervisors of Newton Twp.*, 504 Pa. 71, 470 A.2d 470 (1983) (arbitrators may not mandate an illegal act; courts may not enforce a provision of an interest arbitration award without a determination of legality; no basis to apply equitable principle of estoppel); *Lee v. Mun. of Bethel Park*, 722 A.2d 1165 (Pa.Cmwlth.1999) (where there is an interest arbitration award, an employer may subsequently assert the illegality of a provision because it did not have an opportunity to do so during the bargaining process; as such, no principles of estoppel existed). The Fire Fighters do not address this authority. Under these circumstances, the common pleas court acted appropriately to the extent it vacated the illegal excess of benefits.

■ We conclude, however, that the common pleas court did not go far enough with its remedy. This is because the Fire Fighters failed to comply with the cost estimate requirements in Section 305 of Act 205 for any enhancement of pension benefits.

The Fire Fighters presented a four-page actuary report, together with supporting testimony. The report showed the current plan with approximately *50 percent unfunded liability* of $32,421,069. R.R. at 24a. Nevertheless, the Fire Fighters' actuary assumed the distressed City could afford the $609,116 annual increase in its estimated MMO, and the $1,302,904 annual increase in estimated City contribution under the 70 percent option. *Id.* at 24a. The modification increased the percentage of unfunded liability. *Id.* Significantly, the Fire Fighters' actuary declined to offer any opinion about the legality of the pro-

posed modifications to the pension plan. *Id.* at 22a.

In contrast, the City presented the testimony of Randee W. Sekol (Actuarial Consultant), the current actuarial consultant to the pension plan. Actuarial Consultant opined that the cost estimates of the Fire Fighters' actuary were understated because his assumptions for retirement age were not consistent with experience. *See* Arbitration Hr'g, 4/11/08, Notes of Testimony (N.T.) at 20–21; Supplemental Reproduced Record (S.R.R.) at 60b–61b. He also stated that if the plan were a corporate plan "benefits would be required to be frozen today," and if this were a multi-employer plan, "it would be considered to be in critical status, which would mean the plan's sponsor would have to start taking steps under penalty of law to get a better funding position." N.T. at 35; S.R.R. at 75b.

Section 305(a) of Act 205, 53 P.S. § 895.305(a), requires the presentation of a cost estimate for benefit plan modification by the chief administrative officer of each pension plan. Section 102 of Act 205, 53 P.S. § 895.102, defines **"chief administrative officer"** as "[t]he person who has primary responsibility for the execution of the administrative affairs of the municipality in the case of a municipality, or of the pension plan in the case of a pension plan, or the designee of that person." While the cost estimate itself must be prepared by "an approved actuary," it is clear that the "chief administrative officer" must be involved in the cost estimate process. 53 P.S. § 895.305. This does not mean that the chief administrative officer must approve the actuary in an interest arbitration context, but some involvement of the chief administrative officer is required by statute. The need for such input is obvious where, as here, a proposed modification is illegal.

Further, a review of the Fire Fighters' cost estimate and supporting testimony here raises serious questions as to whether "[the cost estimate is] presented in a way reasonably calculated to disclose to the average person comprising the membership of the governing body of the municipality the impact of the proposed benefit plan, the modification on the future financial requirements of the pension plan and the future minimum obligation of the municipality...." *See* Section 305(e) of Act 205, 53 P.S. § 895.305(e); N.T. at 52–72; S.R.R. at 13b–18b (testimony of Fire Fighters' actuary, Joseph Duda).

More importantly, the Fire Fighters' cost estimate does not clearly address the actuarial soundness of the pension plan after the proposed modifications. Similarly, the Fire Fighters do not highlight any evidence presented to the arbitrators which could support a determination that the pension plan would be actuarially sound after the proposed modifications, and our independent review of the record fails to reveal such evidence. Given the existing 50 percent unfunded liability, and the increase in the unfunded liability under the Fire Fighters' proposals, this was a fatal omission. *See IAFF Local 293.*

In addition, the Fire Fighters' cost estimate only addresses the proposed 70 percent modification in the pension plan. The cost estimate does not clearly address another modification approved by the panel majority: calculation of average year salary based on W–2 income, which includes longevity, overtime and other pay incentives. In this regard, the Fire Fighter's

cost estimate is either incomplete or impermissibly opaque. Under either circumstance, the estimate does not satisfy the complete, accurate and understandable cost estimate requirements of Act 205. 53 P.S. § 895.305.

Finally, we reject as absurd the Fire Fighters' argument that the substance of a cost estimate is immaterial as long as some cost estimate is before the arbitration panel. Such an approach could neuter the actuarial soundness requirements flowing from Act 205's complete, accurate and understandable cost estimate provisions. 53 P.S. § 895.305; *see IAFF Local 293.* Instead, we hold that the record before the arbitrators must demonstrate compliance with the cost estimate requirements of Act 205 and must support the award. Thus, the cost estimate and testimony of the City's Actuarial Consultant, who cautioned that the Fire Fighters' cost estimates were understated and that the Firemen's Pension Plan was already in critically poor financial condition, cannot be said to prove the actuarial soundness of the proposed benefit plan modifications.[7]

For all these reasons, we modify the order of the common pleas court to vacate Section 7 ("*Pension Benefits*") of the 2008 Award, thereby removing pension benefit enhancements from the Award. "An appellate court may affirm, *modify*, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under

---

**7.** The Fire Fighters' sole reference to specific actuarial testimony supporting the 2008 Award is as follows: "During [Actuarial Consultant's] testimony, he indicated that the increase in costs to the pension for the improvements sought by Local 60 would be approximately $2.2 million ( [S.]R.R.54b)." *See* Br. of Designated Appellee at 24.

The testimony cited by the Fire Fighters is part of the City's evidence demonstrating the extent to which the Fire Fighters' actuary understated the costs of the proposed pension modifications. The witness was not asked whether the pension plan would be actuarially sound after the proposed modifications.

the circumstances." 42 Pa.C.S. § 706 (emphasis added).

Judge McCULLOUGH did not participate in the decision in this case.

## ORDER

**AND NOW,** this 29th day of January, 2014, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Lackawanna County, dated November 18, 2009, which modified in part the Interest Arbitration Award dated November 19, 2008, is **MODIFIED** to **VACATE** Section 7 of the 2008 Award.