CITY OF SCRANTON

v.

**E.B. JERMYN LODGE NO. 2 OF the FRATERNAL ORDER OF POLICE, The Pennsylvania Department of Community and Economic Development and the Pennsylvania Economy League Central Pa, LLC, as the Act 47 Coordinator for the City of Scranton**

Appeal of: The City of Scranton, Pennsylvania and The Pennsylvania Department of Community and Economic Development, and the Pennsylvania Economy League Central Pa., LLC, as the Act 47 Coordinator for the City of Scranton.

**City of Scranton**

**v.**

**E.B. Jermyn Lodge No. 2 of the Fraternal Order of Police, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 14, 2013.

Decided Jan. 29, 2014.

Clifford B. Levine, Pittsburgh, for appellants Pennsylvania Department of Community and Economic Development and the Act 47 Coordinator for the City of Scranton.

Paul A. Kelly, Scranton, for appellant City of Scranton.

W. Timothy Barry, Pittsburgh, for appellant The Act 47 Coordinator for the City of Scranton.

Stephen J. Holroyd, Philadelphia, for appellee E.B. Jermyn Lodge No. 2 of the Fraternal Order of Police.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

These consolidated cross-appeals, involving the City of Scranton (City) and its police personnel, originating in a February 2009 interest arbitration award (2009

Award) issued under the statute commonly known as the Policemen and Firemen Collective Bargaining Act or Act 111 (Act 111),[1] return to us from our Supreme Court. On remand, we address retirement benefits.

## I. Background

### A. Procedure

By way of brief procedural summary, a series of interest arbitration awards between the City, designated a distressed municipality pursuant to the Municipalities Financial Recovery Act, commonly known as Act 47 (Act 47),[2] and its public safety employee unions, resulted in a series of complex appeals beginning with appeals from the 2006 interest arbitration awards between the City and its police and fire unions. The primary issues in those appeals addressed the interplay between Act 47 and collective bargaining rights under Act 111. Those issues were ultimately resolved by our Supreme Court in *City of Scranton v. Firefighters Local Union No. 60*, 612 Pa. 23, 29 A.3d 773 (2011) (*Scranton Fire Fighters I–Supreme Court*), a case which dealt with the interest arbitration awards from 2006.

While the appeals from the 2006 awards were pending, a divided arbitration panel entered the 2009 Award with which this opinion deals. We initially resolved the appeals involving the E.B. Jermyn Lodge No. 2 of the Fraternal Order of Police (FOP) in a reported opinion, *City of Scranton v. E.B. Jermyn Lodge No. 2 of Fraternal Order of Police*, 8 A.3d 971 (2010), *vacated*, 614 Pa. 457, 38 A.3d 767 (2012) and *appeal denied*, 615 Pa. 758, 40 A.3d 123 (2012) (*Scranton FOP II–Commonwealth Court*). However, in *City of*

**1.** Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

**2.** Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101–11701.501.

*Scranton v. E.B. Jermyn Lodge No. 2 of Fraternal Order of Police,* 614 Pa. 457, 38 A.3d 767 (2012) (*Scranton FOP II–Supreme Court*), our Supreme Court granted the FOP's appeal, vacated our order in *FOP II–Commonwealth Court,* and remanded for consideration in light of *Scranton Fire Fighters I–Supreme Court.* The parties agree that the only unresolved 2009 Award issues involve retirement benefits.

### B. 2009 Award

The 2009 Award amended the police pension plan. Section 7 of the Award ("*Pension Benefits*") provided:

> The Pension Plan shall be amended to provide for a normal pension to be paid in the following amount of average annual salary:

| Years of Service | Pct. of Average Year Salary |
| --- | --- |
| 20 years | 60 percent |
| 21 years | 62 percent |
| 22 years | 64 percent |
| 23 years | 66 percent |
| 24 years | 68 percent |
| 25 years | 70 percent |

> *The calculation of average year salary shall include all longevity, overtime and other pay incentives.*

2009 Award, 2/2/09, Maj. Op., at 5 (bolding in original, underline added).

In addition, Section 8 of the 2009 Award ("*DROP Benefit*") provided for a deferred retirement option plan (DROP) benefit: "Any bargaining unit member who retires as of January 1, 2008 shall be entitled to receive a DROP benefit in a manner consistent with similar programs being offered in comparable cities of the third class." 2009 Award, Maj. Op., at 5. Section 102 of the Municipal Pension Plan Funding Standard and Recovery Act, commonly known as Act 205 (Act 205), Act of December 18, 1984, P.L. 1005, *as amended,* 53 P.S. § 895.102, defines a "**DROP**" as:

> A deferred retirement option plan created and operated by a local government or the Pennsylvania Municipal Retirement System under Chapter 11 [of Act 205, added by the Act of September 18, 2009, P.L. 396, 53 P.S. §§ 895.1101–31] or any deferred retirement option plan or similar program established by a local government that provides for the commencement and accumulation of retirement benefit payments for active employees with disbursement of the accumulated payments and interest earnings as a lump sum upon termination of employment.

### C. Common Pleas Court

The City, joined by intervenors,[3] sought to vacate the 2009 Award by petition filed in the Court of Common Pleas of Lackawanna County (common pleas court). Relevant here, they averred the retirement benefits award lacked support in the record and failed to comply with the requirements of Act 205 and the applicable pension law.

The common pleas court noted the City's arguments. It focused, however, on Section 1(b) of the Act of August 17, 1951, P.L. 1254, *as amended,* 53 P.S. § 30495(b) (1951 Municipal Pension Act; an act fixing the minimum pensions of police officers

---

3. The Pennsylvania Department of Community and Economic Development (DCED) and the City's Act 47 coordinator intervened before the common pleas court.

and fire fighters in certain cities), which provides (with footnote and emphasis added):

A city of the second class A[4] may grant a cost of living increase to persons receiving an allowance from either the police or firemen's pension system, by reason of, and after termination of the services of any member of the retirement systems. *The total allowance from the systems shall not exceed one-half of the salary currently paid to a patrolman or fireman of the highest pay grade.*

Based on this provision, the common pleas court modified the 2009 Award to reflect a maximum retirement benefit of 50 percent of the salary paid to a patrolman of the highest grade.

The common pleas court also determined the 2009 Award preceded the Act of September 18, 2009, P.L. 396, which amended Act 205 by adding Chapter 11, titled "Deferred Retirement Option Plans." *See* Sections 1101–31 of Act 205, 53 P.S. §§ 1101–31. These provisions specifically authorize the City to offer a DROP benefit to its employees. However, the provisions did not become effective until September 18, 2009. Therefore, the common pleas court determined the arbitration panel exceeded its authority under Act 111 in awarding a DROP prior to the effective date of the statutory amendment authorizing such a benefit. Common Pleas Ct., Slip. Op., 11/18/2009, at 8–9. Accordingly, it vacated the award of a DROP benefit.

Pertinent to the residual dispute, both the City and the FOP appealed the common pleas court's resolution of the retirement benefits issues to this Court. In *Scranton FOP II–Commonwealth Court,* we modified the common pleas court's order to vacate both the pension benefit enhancement and the DROP benefit from the 2009 Award. The FOP appealed, and in *Scranton FOP II–Supreme Court,* the Supreme Court vacated our order and remanded for further consideration, without addressing the retirement benefits. In essence, we reconsider the common pleas court's resolution of the retirement benefits issues.

Appellate review of an Act 111 arbitration award is in the nature of narrow *certiorari. Scranton Fire Fighters I–Supreme Court.* It is limited to issues regarding: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceed his powers; and, (4) deprivation of constitutional rights. *Id.*

## II. Issues

The FOP questions whether the common pleas court erred when it determined on its own motion that the pension benefit enhancement was unlawful, where the City did not raise the issue of illegality to the arbitrators or the court. The FOP also asserts the Act 205 cost estimate provided by its actuary was sufficient to justify the retirement benefits awarded.

The City argues that an illegal interest arbitration award satisfies the "excess of powers" aspect of narrow *certiorari* review. It also contends that it did not waive its right to challenge the admitted illegality of the pension benefit enhancement. Finally, the City asserts that the report of the FOP's actuary was insufficient under Act 205.

## III. Discussion

 Chapter 3 of Act 205 governs minimum funding standards for municipal pension plans. *See* 53 P.S. §§ 895.301–895.307. Compliance with Act 205 is man-

---

4. Scranton is the Commonwealth's only city of the second class A.

datory. Section 301(a) provides (with emphasis added):

(a) **Application.**—Notwithstanding any provision of law, municipal ordinance, municipal charter, pension plan agreement or pension plan contract to the contrary, *the applicable provisions of this chapter shall apply to any municipality which has established and maintains, directly or indirectly, a pension plan for the benefit of its employees,* irrespective of the manner in which the pension plan is administered, and to the respective pension plan.

53 P.S. § 895.301(a). Thus, in the event of an actual conflict between Act 205 and a pension plan modification in a collective bargaining agreement, the requirements of Act 205 must be given effect. *Borough of Ellwood City v. Ellwood City Police Dep't Wage and Policy Unit,* 573 Pa. 353, 825 A.2d 617 (2003). Act 205 also applies to pension plan modifications in Act 111 arbitration awards. *Shippensburg Police Ass'n v. Borough of Shippensburg,* 968 A.2d 246 (Pa.Cmwlth.2009); *Upper Merion Twp. v. Upper Merion Twp. Police Officers,* 915 A.2d 174 (Pa.Cmwlth.2006); *Northampton Twp. v. Northampton Twp. Police Benevolent Ass'n,* 885 A.2d 81 (Pa. Cmwlth.2005).

Sections 302(b) and (c) of Act 205 require an annual determination of the financial requirements of a municipal pension plan for the following year and describe how the municipality's minimum obligation (MMO) with respect to the pension plan is to be determined. 53 P.S. §§ 895.302(b) and (c). Of particular importance here, a Section 302 actuarial report must demonstrate that the pension plan is actuarially sound in order for the municipality to determine the impact of the proposed modification on the pension plan's minimum funding requirements. *Ellwood City Police Dep't; Erie v. Int'l Ass'n of Firefight-*ers, *Local 293,* 836 A.2d 1047 (Pa.Cmwlth. 2003) (*IAFF Local 293* ). Section 302(d) requires that the municipality annually provide for the full amount of the MMO in its budget. 53 P.S. § 895.302(d).

Section 305 of Act 205, which requires an actuarial cost estimate for *any* benefit plan modifications, provides in part (with emphasis added):

(a) **Presentation of cost estimate.**— *Prior to the adoption of any benefit plan modification* by the governing body of the municipality, *the chief administrative officer of each pension plan shall provide to the governing body of the municipality a cost estimate of the proposed benefit plan modification.*

(b) **Defined benefit plan.**—If the pension plan is a defined benefit plan which is self-insured in whole or in part, the cost estimate shall be prepared by an approved actuary and shall either be the updated actuarial exhibits of an actuarial valuation report specified in Chapter 2 or an estimate of the expected actuarial impact attributable to the proposed benefit plan modification.

\* \* \* \*

(e) **Contents of cost estimate.**—*Any cost estimate of the effect of the proposed benefit plan modification shall be complete and accurate and shall be presented in a way reasonably calculated to disclose to the average person comprising the membership of the governing body of the municipality, the impact of the proposed benefit plan, the modification on the future financial requirements of the pension plan and the future minimum obligation of the municipality with respect to the pension plan.*

53 P.S. §§ 895.305(a), (b) and (e).

Here, the City asserts, there is no evidence of compliance with the specific requirements of Act 205. The record does

not contain a "complete and accurate" cost estimate or actuarial report regarding the impact of the proposed maximum pension benefit increases. In addition, there is no evidence regarding the significant impact of including "all longevity, overtime and other pay incentives" as part of the salary on which the pension benefit would be based.

Rather, the City contends, the FOP's actuary presented no evidence that the police pension plan was actuarially sound or that it would remain sound despite the proposed modifications. In fact, his report focused solely on the actuarial cost impact of the proposed pension amendments. He did not relate the costs he estimated to the soundness of the plan.

Citing this Court's decision in *Scranton FOP II–Commonwealth Court*, the City also asserts that the actuarial cost study required by Act 205 must be prepared with oversight from the pension plan's chief administrative officer. In the absence of the plan administrator's assessment of the cost estimate, the requirements of Act 205 are not satisfied.

The City therefore argues the arbitration panel's determination that the increased benefits would have an acceptable limited impact is not supportable under Act 205. Rather, it has the effect of requiring an illegal act. Given the absence of any evidence required by Act 205, the City asserts the common pleas court erred in failing to vacate all retirement benefit changes in the 2009 Award.

In response, the FOP contends it provided the actuarial evidence required by Section 305(b) of Act 205, for a defined benefit plan. *See* DUDA ACTUARIAL CONSULTING, CITY OF SCRANTON POLICE PENSION PLAN ACTUARIAL COST STUDY AS OF JANUARY 1, 2007; Reproduced Record on Remand (R.R.) at 20a–24a. Citing Section 305(b) of Act 205 and its actuarial documentation, the FOP contends the record justified the increases in pension benefits. The FOP further contends its actuarial data address all the requirements of 53 P.S. § 895.305(e) (contents of cost estimate).

Further, the FOP takes issue with the City's claim that the actuary who presents evidence required by Act 205 must be approved by the pension plan's chief administrative officer. Such a requirement is not expressed in the statute, and such a requirement would disrupt the collective bargaining process by making it more difficult for unions to present actuarial evidence. The FOP relies on cases where this Court countenanced evidence from "private" actuaries, but did not directly discuss the issue.[5]

There are several reasons why the 2009 Award of retirement benefit enhancements is problematic. First and foremost, Scranton, a Class 2–A city, is limited to a total pension allowance of 50 percent of the salary currently paid to a patrolman or fire fighter, highest pay grade. 53 P.S. § 30495(b). As the common pleas court determined, the 2009 Award, in allowing a pension up to 70 percent of average salary, violated 53 P.S. § 30495(b).

The FOP does not dispute that the 2009 Award is illegal in this respect; rather, it contends the City waived its legality argument by failing to assert it before the arbitrators. This argument is totally lacking in merit. *Chirico v. Bd. of Supervisors of Newton Twp.*, 504 Pa. 71, 470 A.2d 470 (1983) (arbitrators may not mandate an illegal act; courts may not enforce a provision of an interest arbitration award with-

---

**5.** *See Erie v. Int'l Ass'n of Firefighters, Local 293,* 836 A.2d 1047 (Pa.Cmwlth.2003); *Bor-* ough of *Doylestown v. Doylestown Borough Police Ass'n,* 732 A.2d 701 (Pa.Cmwlth.1999).

out a determination of legality; no basis to apply equitable principle of estoppel); *Lee v. Mun. of Bethel Park,* 722 A.2d 1165 (Pa.Cmwlth.1999) (where there is an interest arbitration award, an employer may subsequently assert the illegality of a provision because it did not have an opportunity to do so during the bargaining process; as such, no principles of estoppel existed). The FOP does not address this authority. Under these circumstances, the common pleas court acted appropriately to the extent it vacated the illegal excess of benefits.

We conclude, however, that the common pleas court did not go far enough with its remedy. This is because the FOP failed to comply with the cost estimate requirements in Section 305 of Act 205 for any enhancement of retirement benefits. Here, the FOP presented a four-page report from its actuary. It shows the pension plan with approximately *one-third unfunded liability* of $19,135,558. R.R. at 22a. The unfunded amount *increases* under the FOP's proposed modifications. *Id.* Nevertheless, the FOP's Actuary assumed the distressed City can afford the increase in its estimated annual MMO from the current $814,243 to $1,483,050 and the estimated annual City contribution from the current $0 to $527,545. R.R. at 24a. Significantly, FOP's Actuary expressly declined to offer any opinion about the legality of the proposed modifications to the pension plan and the addition of a DROP benefit. *Id.* at 23a.

Section 305(a) of Act 205 requires the presentation of a cost estimate for benefit plan modification by the chief administrative officer of each pension plan. Section 102 of Act 205, 53 P.S. § 895.102, defines **"chief administrative officer"** as "[t]he person who has primary responsibility for the execution of the administrative affairs of the municipality in the case of a municipality, or of the pension plan in the case of a pension plan, or the designee of that person." While the cost estimate itself must be prepared by "an approved actuary," it is clear that the "chief administrative officer" must be involved in the cost estimate process. 53 P.S. § 895.305. This does not mean that the chief administrative officer must approve the actuary in an interest arbitration context, but some involvement of the chief administrative officer is required by statute. The need for such input is obvious where, as here, a proposed modification is illegal.

More importantly, the FOP's cost estimate does not clearly address the actuarial soundness of the police pension plan after the proposed modifications. Given the existing one-third unfunded liability of $19,135,558, and the increase in the unfunded liability under the FOP's proposals, this was a fatal omission. *See IAFF Local 293.*

■ Additionally, while we disagree with the common pleas court's rationale for vacating the DROP award,[6] we nevertheless agree with the result. We may affirm a lower court on a different rationale if the basis for our decision is clear on the record. *Commonwealth v. Ortho-McNeil-Janssen Pharm., Inc.,* 52 A.3d 498 (Pa.Cmwlth.2012). The addition of a DROP benefit is a pension plan modification which must also meet Act 205's requirements for an actuarial report indicating the pension plan is actuarially sound

---

**6.** The arbitration panel had the authority to implement a DROP regardless of whether the 2009 Award preceded the 2009 amendments to Act 205 adding the DROP provisions. *City of Lancaster v. Fire Fighters Local Union No.* *319,* 834 A.2d 676 (Pa.Cmwlth.2003) (municipality had implied authority to implement a DROP benefit for its employees; an arbitration panel could impose such a plan in interest arbitration under Act 111).

and would remain actuarially sound after the DROP is added. *IAFF Local 293.* Further, in *IAFF Local 293,* 836 A.2d at 1052, we noted that Act 205 requires testimony from an actuarial witness that the pension plan "would be actuarially sound after modification of the plan to include the DROP." Here, as in *IAFF Local 293,* the union failed to present the required testimony

As both the pension benefit enhancement in Section 7 and the DROP benefit in Section 8 are impacted by the inadequacy of the FOP's proof, vacation of those parts of the 2009 Award is required. "An appellate court may affirm, *modify,* vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." 42 Pa.C.S. § 706 (emphasis added).

### IV. Conclusion

For the above reasons, we modify the common pleas court's order by vacating Section 7 (*"Pension Benefits"*) and Section 8 (*"DROP"*) of the 2009 Award.

Judge McCULLOUGH did not participate in the decision in this case.

### *ORDER*

**AND NOW,** this 29th day of January, 2014, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Lackawanna County, dated November 18, 2009, which modified in part the Interest Arbitration Award dated February 6, 2009, is hereby **MODIFIED** so as to **VACATE** Sections 7 and 8 of the Award.