# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Wilkes-Barre           :
                                       :
             v.                 :     No. 1575 C.D. 2017
                                         :     Argued: September 14, 2018
Wilkes-Barre City Fire Fighters    :
Local Union No. 104,           :
                    Appellant    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge


<u>OPINION NOT REPORTED</u>


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: October 11, 2018**


The Wilkes-Barre City Fire Fighters Local Union No. 104 (Union) and the City of Wilkes-Barre (City) dispute what forms of compensation are included in the term "salary" for purposes of calculating pension contributions. The Union appeals the Luzerne County Court of Common Pleas' (common pleas) Order vacating the Arbitrator's Award (Award), which required the City to include disputed forms of compensation in pension calculations. At issue is whether the Award was an impermissible modification to the pension plan, because no actuarial study was performed first. This issue is almost identical to the one presented before this Court recently in *City of Wilkes-Barre v. Wilkes-Barre Police Benevolent Association* (*Wilkes-Barre PBA*) (Pa. Cmwlth., No. 1145 C.D. 2017, filed June 4, 2018) *petition*

*for allowance of appeal filed*, (Pa., No. 440 MAL 2018, filed July 6, 2018).[1]  Given the Arbitrator's findings, and the narrow *certiorari* scope of review, consistent with *Wilkes-Barre PBA,* we reverse.

## I.    **Factual Background**

The Union and the City are governed by Act 111,[2] commonly referred to as the Policemen and Firemen Collective Bargaining Act, and bound under a Collective Bargaining Agreement (CBA) first executed in 2004.  The CBA was extended until December 31, 2016, through an Act 111 Interest Arbitration Award and a 2012 settlement agreement between the parties (Settlement Agreement).   These documents, along with the relevant city ordinances, collectively govern the present terms of the CBA.  Article 21 of the CBA relating to the pension plan (Plan) provides that a pension is "computed on the basis of the Fire Fighter's final year average salary."  (Reproduced Record (R.R.) at 35a.)  As defined under the governing ordinances of the Plan, contributions are based on monthly compensation.  Wilkes-Barre, Pa., Code of Ordinances, No. 25-76, § 2-202, 7-8-76 (2018).[3]  "**Monthly compensation**" is defined as "basic monthly compensation, **plus** longevity payments**, acting officer's pay, EMT bonuses, overtime pay, night shift differential, educational incentive payments, holiday pay and annual buy back**

---

[1] *Wilkes-Barre PBA*, an unpublished opinion, is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures.  210 Pa. Code § 69.414(a).

[2] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1 – 217.10.

[3] The Wilkes-Barre City Ordinances are not provided in the record, but are available online. Chapter 2, Article III, Division 4 contains the provisions relating to the fire fighters' pension fund. "Monthly compensation" is defined in Section 2-202 and participant contribution requirements are set forth in Section 2-205. The relevant Article and Division are available here: https://library.municode.com/pa/wilkesbarre/codes/code_of_ordinances?nodeId=PTIICOOR_CH 2AD_ARTIIIEMOFBE_DIV4FIPEFU (last accessed Oct. 10, 2018).

2

**of sick leave**," and salary is noted as "includ[ing] a base monthly salary." (*Id.* §§ 2-202, 2-205 (emphasis added).) With the exception of base pay and longevity, the forms of compensation included in this definition are collectively the disputed forms of compensation in the present case.

The **Settlement Agreement** in 2012 not only extended but also added new language to the CBA, particularly Article 21 relating to pensions. The additional language in the Settlement Agreement relevant to this dispute states that "[a]ll fire fighters hired after January 1, 2013 shall be entitled to pension benefits **not in excess of [T]he Third Class City Code**.[4]" (R.R. at 62a (emphasis added).) The Third Class City Code defines "salary" as "the fixed amount of compensation paid at regular, periodic intervals by the city to the member . . . ." (R.R. at 307a; Section 14319 of the Third Class City Code *formerly* 53 P.S. § 39328.[5]) The governing ordinances of the Plan were not amended to include this specific definition provided under The Third Class City Code. Three Auditor General Reports, collectively auditing from January 2007 to December 2013, state that "salary," as defined in the governing ordinances, has been inconsistent with The Third Class City Code throughout that time. (R.R. at 294a, 307a, 324a.) Each of these reports notes the same cause for the lack of compliance, namely that "pension benefits are a mandatory subject of collective bargaining," which the City has been unsuccessful in bargaining to amend. (R.R. at 296a, 311a, 328a.) The reports acknowledge that because of this lack of amendment, the City has "been ordered by the Pennsylvania

---

[4] Act of June 23, 1931, P.L. 932, *as amended*, *formerly* 53 P.S. §§ 35101-39701. This version of The Third Class City Code was repealed by Section 2(2) of the Act of November 24, 2015, P.L. 242, No. 67, effective January 25, 2016. The Third Class City Code is now codified at 11 Pa. C.S. §§ 10101-14702. The former code is cited here, as that was the one in effect at the time of the proceedings.

[5] Under the updated code, this definition is currently codified at 11 Pa. C.S. § 14319.

3

Labor Relations Board to have the benefits continue as they are currently prescribed in the City's governing ordinances." (R.R. at 296a, 311a, 328a.)

It is undisputed that following the Settlement Agreement, pension contributions from fire fighters **hired after January 1, 2013, did not include the disputed compensation** but were measured by base salary and longevity alone. In contrast, contributions of those fire fighters hired prior to that date were calculated with the inclusion of the disputed compensation. Captain Michael Bilski grieved the matter in December 2015.

The arbitration hearing concerning the grievance was held on October 20, 2016. The Arbitrator heard testimony from Captain Bilski, who was the Union president, and Nicole Ference, the former payroll benefits coordinator and current human resources director for the City.[6] Captain Bilski testified regarding negotiations of the Settlement Agreement, in particular the City's concern of achieving compliance with The Third Class City Code as noted in the Auditor General Reports. (R.R. at 338a; Arbitrator Decision at 4.) According to Captain Bilski, the City had represented its only concern in that respect was to cap pensions at 50% of final year salary for fire fighters hired after January 1, 2013. Captain Bilski elaborated that prior to the Settlement Agreement, there was a 1.25% increase in pension for each year a fire fighter worked after age 50. This meant that pensions could reach up to the maximum of 70% of the final year average salary. Given this, Captain Bilski testified, the new language added under the Settlement Agreement intended to eliminate those pension increases for new hires, but not to alter the manner in which contributions were calculated. Captain Bilski further testified that the City gave assurances, upon which he relied, that the proposed additional

---

[6] The reproduced record does not contain a transcript of the arbitration proceeding and is only summarized briefly in the Arbitrator's Decision.

4

language would not change the manner in which pension contributions were calculated.

Ms. Ference, on behalf of the City, testified that after the execution of the Settlement Agreement, "she was instructed to limit the 5% member contributions based on base salary and longevity alone." (Arbitrator Decision at 5.) During Ms. Ference's testimony, the Auditor General Reports were introduced, along with other exhibits illustrating how pension contributions were calculated before and after the Settlement Agreement became effective. The Arbitrator noted the content of the Auditor General Reports sponsored by Ms. Ference's testimony, specifically that the Plan's non-compliance with The Third Class City Code resulted from the City's inability to successfully bargain new terms.

In the time between the hearing and the final decision in this matter, the arbitration decision in *Wilkes-Barre PBA* was issued, resolving a separate dispute with the City about nearly identical disputed language in pension provisions for the police.[7] Relying upon the arbitrator's reasoning in *Wilkes-Barre PBA* and the testimony provided by Captain Bilski, the Arbitrator in this case issued his Award on February 16, 2017, ordering the City to include the disputed forms of compensation in its pension contribution calculations. The Arbitrator acknowledged that while The Third Class City Code definition of salary could be limited to only base salary and longevity, its broad language allowed it to include income beyond that if the parties so agreed by agreement or through past practice. Because of this

---

[7] In *Wilkes-Barre PBA*, an arbitration award amended the collective bargaining agreement to specify that officers hired after the award would be "entitled to pension benefits not in excess of [T]he Third Class City Code." *Wilkes-Barre PBA*, slip op. at 4 (quotation omitted) (alteration in original). Given the nearly identical language at issue in both cases, the Arbitrator in this dispute provided the parties an opportunity to comment on the arbitration award in *Wilkes-Barre PBA* before the Decision was rendered.

ambiguous statutory language, the Arbitrator sought to determine the past practice of the parties for calculating contributions under the CBA to conclude if the City had altered that practice following the Settlement Agreement. Despite a parol evidence objection[8] raised by the City, the Arbitrator gave significant weight to Captain Bilski's testimony about Settlement Agreement negotiations, finding that the City's past practice included the disputed forms of compensation in pension calculations. Based upon Captain Bilski's and Ms. Ference's testimony regarding how contributions were calculated prior to the Settlement Agreement, the Arbitrator found both parties understood pension contributions to include the disputed forms of compensation under both the old and new pension plans. Although the City argued that the past practice was to exclude the disputed forms of compensation for employees hired after January 1, 2013, the Arbitrator disagreed, noting that this practice was perceived as a departure from the norm, thus prompting the grievance in the first place. The Arbitrator concluded that the parties did not intend to alter the manner of pension contribution calculation through the Settlement Agreement, and thus the City violated the CBA when it began excluding the disputed forms of compensation.

The City petitioned common pleas to vacate and stay the Award. (Supplemental Reproduced Record (S.R.R.) at 2b.) Upon review, common pleas first noted the narrow *certiorari* scope of review, which limited its inquiry. (Common Pleas Opinion (Op.) at 2.) Based upon this, common pleas characterized the issue before it as whether the Award ordering the inclusion of the disputed forms

---

[8] The City asserted during arbitration that the unambiguous disputed language precluded consideration of evidence about the negotiations. The Arbitrator rejected this argument, finding that the language "raise[d] issues of different interpretations" that the use of parol evidence could resolve. (Arbitrator Decision at 15.)

6

of compensation in pension contributions exceeded the Arbitrator's authority. Finding the issue to be analogous to the issues presented in *Shippensburg Police Association v. Borough of Shippensburg*, 968 A.2d 246 (Pa. Cmwlth. 2009), and *Wilkes-Barre PBA*, which was pending appeal before this Court at the time, common pleas vacated the Award. Specifically, common pleas found that the Award exceeded the Arbitrator's authority by ordering a modification of the Plan without an Act 205[9] cost study.[10]

## II. Issues

On appeal,[11] the Union raises two main issues:[12] (1) whether common pleas correctly concluded the Award was a pension modification; and (2) whether common pleas failed to adhere to the narrow *certiorari* scope of review in making its determination. Essentially, the Union challenges whether, under narrow *certiorari* review, common pleas correctly concluded that the Arbitrator exceeded his authority and modified the Plan by ordering inclusion of the disputed compensation. Citing to a long history of Pennsylvania case law supporting the concept of limited judicial interference under narrow *certiorari*, the Union stresses the deference provided to an arbitrator's findings upon review and the restricted

---

[9] Act of December 18, 1984, P.L. 1005, *as amended*, 52 P.S. §§ 895.101-895.803.

[10] Section 305(a) of Act 205 requires a cost estimate "[p]rior to the adoption of any benefit plan modification by the governing body of the municipality[.]" 53 P.S. § 895.305(a).

[11] Narrow *certiorari* review is "a plenary, non-deferential standard where the resolution of the issues turns on a question of law or application of law to undisputed facts," but "where the question depends on fact-finding . . . the court is bound by the arbitrator's determination even if the arbitrator is wrong." *City of Phila. v. Fraternal Order of Police, Lodge No. 5*, 181 A.3d 485, 489 (Pa. Cmwlth. 2018) (quoting *Town of McCandless v. McCandless Police Officers Ass'n*, 952 A.2d 1193, 1196 n.6 (Pa. Cmwlth. 2008)).

[12] The Union raises a third issue regarding whether common pleas erred in vacating the Award. As the first two issues encompass that ultimate determination, the issue is given no separate treatment in the Union's Brief and is not discussed specifically here.

nature of the Court's review of an Act 111 award. The Union maintains that the Arbitrator did not exceed his powers by ordering an illegal act (a modification of the Plan without the requisite actuarial study). Noting this Court's deference to the definition of salary as determined by the parties, the Union urges us to find that the disputed pay has always been included in that definition and is not unsettled by the Award. The Union asserts that the Award merely "ordered the restoration of the status quo," and common pleas' finding of a modification without further analysis was in error. (Union's Brief at 18, 20.)

In response, the City argues that common pleas was directly within its scope of review when it vacated the Award because the Award mandated a modification of the Plan. Relying primarily upon *Shippensburg* and *Muhlenberg Township v. Muhlenberg Township Police Labor Organization* (Pa. Cmwlth., No. 1327 C.D. 2013, filed May 2, 2014), the City asserts that the present case is of the same nature, as the Award was an impermissible modification subject to reversal. The City contends that the Settlement Agreement created a practice of excluding the disputed forms of compensation, thus the Award was an impermissible modification of that practice.

### III. Analysis

The narrow *certiorari* scope of review restricts common pleas and this Court's review of the Act 111 grievance arbitration Award at issue. Under narrow *certiorari*, this Court may only inquire into four aspects of the arbitration award: "(1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *Pa. State Police v. Pa. State Troopers' Ass'n*, 656 A.2d 83, 90 (Pa. 1995). Based upon common

8

pleas' decision and the issues raised by the parties on appeal, only the third prong of narrow *certiorari* review, whether the Award exceeds the arbitrator's powers, is at issue in the present case.

This Court has determined that an Act 111 arbitration order must be vacated as exceeding an arbitrator's authority if it requires a party to perform an illegal act. *Shippensburg*, 968 A.2d at 251. An arbitrator is only able to "require a public employer to do that which the employer could do voluntarily." *Pa. State Police*, 656 A.2d at 90. Orders **modifying** pension plans in the absence of an Act 205 study amount to an illegal act; thus they exceed the scope of an arbitrator's powers. *Shippensburg*, 968 A.2d at 251. An order is considered to create a modification that requires an Act 205 study when it is "established that . . . calculations before the award were completely and **consistently** different from . . . calculations after the award." *Penn Twp. v. Penn Twp. Police Ass'n* (Pa. Cmwlth., No. 2249 C.D. 2009, filed Dec. 13, 2010), slip op. at 5 (emphasis added).[13] For example, in *Shippensburg*, this Court found that where a pension plan had **not** included the disputed pay for 25 years, an arbitration award requiring its inclusion constituted a modification. *Shippensburg*, 968 A.2d at 251.

Given the nearly identical issues and disputed language, our recent decision in *Wilkes-Barre PBA* is persuasive for resolving whether the Award constitutes a modification. In that case, a prior interest arbitration award added a term in the collective bargaining agreement stating that officers hired after the award "shall be entitled to pension benefits not in excess of [T]he Third Class City Code." *Wilkes-Barre PBA*, slip op. at 4 (quotation omitted). The union grieved the matter when the disputed forms of compensation (i.e., overtime, holiday pay, court pay, training pay)

---

[13] *Penn Township* is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

9

were not included in pension calculations, and the arbitrator determined the City violated the collective bargaining agreement by excluding the compensation. *Id.*, slip op. at 2, 3, 8. Common pleas vacated the award, finding it constituted a pension modification without an Act 205 study. *Id.*, slip op. at 9. Under narrow *certiorari* review, this Court reversed, reasoning that the award was not a modification of past practice. *Id.*, slip op. at 14. We emphasized that because the City "**took no action** . . . to formalize its interpretation" of what compensation was included in the definition of "salary" following the prior arbitration, the current arbitration award "did not modify the plan" but simply "sought to maintain the status quo." *Id.*, slip op. at 14 (emphasis in original). Distinguishing *Shippensburg* and *Muhlenberg*, we noted those cases lacked a past practice of "includ[ing] the disputed compensation." *Id.*, slip op. at 17.

Due to the narrow *certiorari* scope of review and the almost indistinguishable nature of this case and *Wilkes-Barre PBA*, we must reverse common pleas. The Award in this case requires the City to do what it was already required to do, which is to include the disputed forms of compensation in pension contribution calculations. Because the CBA and its governing ordinances have not been formally modified to reflect exclusion of the disputed forms of compensation, the City is bound by its past practice. Past practice, as established by the Auditor General Reports and Captain Bilski's testimony, is inclusion of the disputed forms of compensation in the pension contributions. (R.R. at 296a, 349a.) In fact, the Auditor General Reports not only establish past practice, but also confirm the lack of formal modification to the ordinances through collective bargaining, even after the Settlement Agreement. The most recent report, which states that the current CBA remained effective through December 31, 2016, notes that the governing ordinances

10

were not modified to bring the Plan in compliance. Rather the City remains under order from the Pennsylvania Labor Relations Board to continue benefits as they are currently set forth in the ordinances. Therefore, the language from the Settlement Agreement relating to compliance with The Third Class City Code does not suffice as a formal modification of the definition of salary under the CBA to exclude the disputed forms of compensation. Much like *Wilkes-Barre PBA*, because there was no formal change to the definition of "salary" after the Settlement Agreement, the exclusion of the disputed forms of pay from pension contributions for employees hired after January 1, 2013, was not in line with the ordinances. Therefore, when the Arbitrator ordered the City to include the disputed compensation once more, he was requiring compliance with the CBA and its corresponding ordinances as they stood at the time. It was not a modification triggering an Act 205 study, but rather a return to the language and past practice under the CBA. *See Wilkes-Barre PBA*, slip op. at 7.

This is consistent with this Court's jurisprudence, as we have generally found that an impermissible modification to a plan exists where an established practice is altered or there is deviation from what is set forth in the CBA. *See, e.g.*, *Upper Merion Twp. v. Upper Merion Twp. Police Officers*, 915 A.2d 174, 180 (Pa. Cmwlth. 2006) (affirming the vacation of an arbitration order requiring a retroactive application of survivor pension benefits not contemplated within the collective bargaining agreement); *Northampton Twp. v. Northampton Twp. Police Benevolent Ass'n*, 885 A.2d 81, 85 (Pa. Cmwlth. 2005) (finding an Act 111 award that modified pension contributions from 5% to 3% without any actuarial evidence of the effect of that change exceeded the arbitrator's powers); *Falls Twp. v. Police Ass'n of Falls*

11

*Twp.* (Pa. Cmwlth., No. 1972 C.D. 2010, filed Oct. 19, 2011), slip op. at 10[14] (acknowledging that an arbitration award changing the manner of pension contribution calculation from the established method under the collective bargaining agreement constituted a modification).

The City relies heavily upon *Shippensburg* and *Muhlenberg* to support the finding of a modification in the Award. Just as in *Wilkes-Barre PBA*, these cases are distinguishable. In *Shippensburg*, a police officer initiated a grievance when his unused vacation pay, paid to him in a lump sum, was not included in the calculation of his monthly pension. 968 A.2d at 248. The trial court affirmed an arbitration award ordering the Borough of Shippensburg to include the disputed pay. *Id.* at 248-49. This Court reversed, reasoning that the arbitration award exceeded the arbitrator's authority by modifying the longstanding **25-year past practice** between the parties and unsettling the Borough's pension liability. *Id.* at 251. As opposed to *Shippensburg*, the present case contains an established past practice between the parties that is **restored rather than unsettled** by the Award. The parties have historically included the disputed forms of pay in calculations, a practice that has not been formally modified by the Settlement Agreement nor any other collective bargaining. As a result, the Award requiring inclusion of the disputed forms of pay does not modify past practice, contradict the CBA, or unsettle the City's pension liability. It simply maintains the status quo and is within the Arbitrator's authority.

*Muhlenberg* is even less dispositive, as the parties in that case agreed the award was a modification. Thus, our analysis there focused only upon whether the arbitrator correctly found the modification to be actuarially sound. *Muhlenberg*, slip op. at 21, 27. Unlike in *Muhlenberg*, we are not determining whether the inclusion

---

[14] *Falls Township* is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

of the disputed compensation is an actuarially sound modification, but whether that inclusion is a modification at all. The Award in this case does not modify the pension liability of the City in a manner necessitating a study, but simply holds the City to the ordinances governing the Plan and the past practice to which it has previously adhered. The City's argument that its past practice is exclusion of the disputed forms of compensation does not succeed, as that practice was never formalized. This lack of formalization to alter the forms of compensation that constitute salary was at the heart of the outcome in *Wilkes-Barre PBA* and dictates the same outcome here. Because the Award requires a return to the status quo rather than a modification, this decision was within the Arbitrator's authority and common pleas had no grounds to reverse under narrow *certiorari*. Accordingly, we reverse.

**RENÉE COHN JUBELIRER,** Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Wilkes-Barre          :
:
         v.          :   No. 1575 C.D. 2017
:
Wilkes-Barre City Fire Fighters   :
Local Union No. 104,        :
          Appellant   :

## O R D E R

**NOW**, October 11, 2018, the Order of the Luzerne County Court of Common Pleas, dated October 6, 2017, in the above-captioned case, is hereby **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** Judge